775 A.2d 1207

Shawn R. TORBOLI

v.

Joseph A. TORBOLI.

No. 123, Sept. Term, 1999.

Court of Appeals of Maryland.

July 11, 2001.

**54**

Thomas A. Wade, Hagerstown, for petitioner.

Steven R. Cohen (Law Offices of Steven Robert Cohen, on brief), Frederick, for respondent.

C. William Michaels, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

BELL, Chief Judge.

The issue in this case involves the effect of the parties' reconciliation during the term of a protective order on the enforcement of an emergency family maintenance award, made as a part of the protective order, where the protective order was neither modified nor rescinded during its term and the enforcement petition was filed after the expiration of the term of the protective order. Having found that the parties temporarily reconciled during the term of the protective order, the trial court declined to enforce the emergency family maintenance award for the period during which the parties were reconciled, but did order it enforced for the period before. The Court of Special Appeals affirmed. *Torboli v. Torboli,* 127 Md.App. 666, 736 A.2d 400 (1999). We granted the Petition for Writ of Certiorari, filed by Shawn R. Torboli,

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IX, Section 3A, he also participated in the decision and adoption of this opinion.

the petitioner, to review this important and interesting issue. *Torboli v. Torboli,* 357 Md. 190, 742 A.2d 520 (1999). We shall affirm the judgment of the intermediate appellate court, but for reasons different than those on which that court relied.

On petition of the petitioner and with the consent of Joseph A. Torboli, her husband, the respondent, the Circuit Court for Washington County issued a protective order for the petitioner and against the respondent. The order, which was to remain in effect for approximately six months, from June 22, 1995 to January 8, 1996,[1] gave custody of the parties' minor daughter to the petitioner and ordered that the respondent not abuse, threaten to abuse or harass the petitioner. It ordered the respondent to stay away from the petitioner's residence, her place of employment and their daughter's school. In addition, the order provided for emergency family maintenance. *See* § 4–501(f).[2] Pursuant to that provision, it was ordered "[t]hat the Responde[nt] shall pay emergency family maintenance to Shawn Torboli as follows, $750.00 per month commencing June 26, 1995 and like amount on or before the 30th of each month thereafter the second payment being due July 30, 1995." [3]

---

1. When the protective order was issued Md.Code (1984, 1991 Repl.Vol., 1994 Cum.Supp.), § 4–506(g) of the Family Law Article provided:
 "(g) Duration.—All relief granted in a protective order shall be effective for the period stated in the order, not to exceed 200 days."
 By Acts 1997, ch. 307, § 2, effective Oct. 1, 1997, § 4–506(g) was amended and now provides:
 "(g) Duration.—(1) Except as provided in paragraph (2) of this subsection, all relief granted in a protective order shall be effective for the period stated in the order, not to exceed 12 months.
 "(2) A subsequent circuit court order pertaining to any of the provisions included in the protective order shall supersede those provisions in the protective order."

2. "(f) 'Emergency family maintenance' means a monetary award given to or for a person eligible for relief to whom the respondent has a duty of support under this article based on:
 "(1) the financial needs of the person eligible for relief; and
 "(2) the resources available to the person eligible for relief and the respondent."

3. Section 4–506(d)(8), at that time provided:

Almost ten months after the protective order expired, the petitioner filed in the Circuit Court *"Petitioner's Request for Sanctions and Enforcement of Child Support Provisions of Protective Order."* Noting that no modifications of the protective order had been requested by either party and alleging that only $640 had been paid, the petitioner asked the court to order the respondent to pay to her the balance due under the emergency family maintenance portion of the order, $4,610. After a hearing, the Circuit Court dismissed the petition, concluding that, since the protective order had expired, it could not then enforce it, even though the claimed violations occurred while the order was in effect. Holding "that § 4–507(g) does not prohibit a court from enforcing or otherwise addressing violations of an expired protective order when the acts or omissions occurred while the protective order was in effect," the Court of Special Appeals reversed, *Torboli v. Torboli*, 119 Md.App. 684, 705 A.2d 1186 (1998), and remanded the case to the Circuit Court for further proceedings.

On remand, the respondent acknowledged that he did not make all of the payments required by the emergency family maintenance provision of the protective order. He maintained, however, that he and the petitioner reconciled during

---

"(d) The protective order may include any or all of the following relief:

\* \* \* \*

"(8) award emergency family maintenance as necessary to support any person eligible for relief to whom the respondent has a duty of support under this article, including an immediate and continuing withholding order on all earnings of the respondent in the amount of the ordered emergency family maintenance in accordance with the procedures specified in Title 10, Subtitle 1, Part III of this article."

By virtue of Chapter 449, Acts 1999, effective Oct. 1, 1999, which inserted present (d)(6), the emergency family maintenance provision was redesignated as subsection (d)(9). Section 4–501(e), now § 4–501(f), defined "emergency family maintenance" as follows:

"a monetary award given to or for a person eligible for relief to whom the respondent has a duty of support under this article based on:

"(1) the financial needs of the person eligible for relief; and

"(2) the resources available to the person eligible for relief and the respondent."

the term of the protective order and, as a consequence, the payments were not due. The petitioner vehemently disagreed with that contention. The court took testimony on the issue of the parties' reconciliation, hearing from the parties, their daughter, and two of the respondent's co-workers. The respondent's daughter and the co-workers supported the respondent's contention that the parties had reconciled. Only the petitioner testified to the contrary and the trial court did not find her "to be particularly credible."

The Circuit Court made two express findings, that: "the parties did intend to reconcile and did, for the most part, live in the same residence between July 1, and December 15, 1995" and "the parties did not intend to rely on the protective order after sometime in July 1995." Having found a reconciliation and commenting that "a party cannot pick and choose which portions of the order that she wants to embrace," it noted that, by the act of reconciling, many of the provisions of the protective order were rendered a nullity, mentioning, by way of example, the order to stay away from each other, to vacate the family home, the custody of their daughter and the visitation. Although it acknowledged that it was not controlling in a domestic violence case, the issue being the effect of reconciliation on a party's entitlement to alimony, but finding that "it is persuasive and makes commonsense as well," the court relied on *Thomas v. Thomas*, 294 Md. 605, 451 A.2d 1215 (1982), which it characterized as holding "that alimony terminates on reconciliation and there is no need for judicial action in that regard."

As indicated, the Court of Special Appeals affirmed the judgment of the Circuit Court. In doing so, it addressed two questions, the sufficiency of the evidence that a reconciliation of the parties occurred and whether that reconciliation nullified the emergency family maintenance payments ordered as a part of the protective order.[4] Perceiving the issue before it to

---

4. The latter question is not the one which the petitioner posed. As framed by the petitioner, the intermediate appellate court was asked to decide:

be a narrow one, "*i.e.*, whether payments under an emergency family provision of a protective order are enforceable during reconciliation," 127 Md.App. at 676, 736 A.2d at 406, and, like the Circuit Court, finding persuasive our opinion in *Thomas*, reiterating, after a thorough review of the law of divorce and alimony along with a painstaking analysis, a proposition announced as early as *Wallingsford v. Wallingsford*, 6 H. & J. 485, 488 (1825): "upon their mutual consent to live together, it [alimony] ceases," 294 Md. at 615, 451 A.2d at 1220, the intermediate appellate court held "that the emergency family provision of a protective order is nullified upon the parties' reconciliation." *Torboli*, 127 Md.App. at 676, 736 A.2d at 406.

The petitioner does not challenge on this appeal the sufficiency of the evidence to establish that the parties reconciled during the term of the protective order.[5] Nor does she contend that reconciliation of the parties does not, or can never, affect a protective order or the emergency family

---

"Did the Court err as a matter of law by finding reconciliation of the parties nullified the emergency family maintenance provisions of a protective order under the domestic violence statute contrary to the provisions of Section 4–507(a) of the Family Law Article, where there was no modification or rescission of the subject protective order during the term of that order?"

The Court of Special Appeals rephrased the issue as follows:

"Did the circuit court err in holding that a reconciliation between the parties nullified family maintenance payments under Md.Code (1984, 1999 Repl.Vol.), Section 4–507(d)(8) of the Family Law Article?"

Dissatisfied with this formulation of the issue, the petitioner argues that it effectively deprived her of her right to appeal because that formulation allowed the Court of Special Appeals to "avoid the legislative mandate of Section 4–507(a) of the Family Law Article." Given our disposition of this case, we do not address that issue.

5. In her reply brief, the petitioner states:

"Appellant [the petitioner] asserts the Circuit Court's conclusion that a reconciliation had taken place between the parties is not properly before this Court. Although this issue was the subject of two questions presented by Appellant in *Torboli v. Torboli*, 127 Md.App. 666, 736 A.2d 400 (1999), that issue was not raised by Appellant in her brief in this appeal nor in her petition for writ of certiorari. Appellant has abandoned that claim of error. Appellee has never filed a cross appeal nor did he respond to the petition for writ of certiorari. Further, Appellant contends that issue is not necessary to the determination of other issues properly on appeal."

maintenance provision of such order. Indeed, the petitioner makes clear, in her reply brief, that she "is not contending that reconciliation cannot be a proper basis for modification or rescission by the issuing court, during the term of the protective order, and after requisite notice and a hearing." [6] Instead, she limits the focus of her appeal largely to the question of the applicability of § 4–507(a)(1) to the facts of this case and whether that section prescribes the exclusive method for modifying or rescinding a protective order and even contesting

---

**6.** Responding to several of the arguments advanced by the respondent in which he characterized her position on the impact of the parties' reconciliation on a protective order or any of its provisions, the petitioner said the following in her reply brief:

"Appellant [the petitioner] does not maintain that the applicable section precludes any finding that reconciliation of the parties could affect the family maintenance provisions of a protective order. What Appellant does maintain, rather, is that pursuant to the applicable section, the issuing court may modify or rescind the protective order during the term of the order after required notice and a hearing."
\* \* \* \*

"Appellant ... makes no such contention [that the statute was violated because it does not expressly permit protective orders, and their provisions, to be modified by a court finding that the parties have reconciled] but explains her contention is that the terms of the applicable statute permit modification or rescission of a protective order by the issuing court during the term of that order."
\* \* \* \*

"Appellant ... does not so contend [that a clear expression of the General Assembly is necessary in order that reconciliation be a basis for modifying a protective order or any of its provisions] but explains that reconciliation of the parties may well be the basis for an issuing court to modify or rescind a protective order during the term of that order. No such modification or rescission took place here."
\* \* \* \*

"While Appellant concedes that acts of the parties in a domestic violence proceeding may affect the protective order or its provisions, those acts can not render the protective order or its provisions nugatory. Rather, by the dictates of Subsection 4–507(a) the court may modify or rescind the protective order or its provisions by using the acts of the parties as a basis for the modification or rescission. However, the power of the issuing court to modify or rescind its protective order and provisions is limited to occurring during the term of the order and after the requisite notice and hearing. The actions of the parties can be used as a basis or reason for the issuing court to modify, rescind or nullify the protective order and its provisions, but the parties can not, themselves, nullify the protective order [or] its provisions."

its enforceability. Therefore, the petitioner argues that, as a matter of law, it is error for a trial court, in clear disregard of § 4–507(a)(1), to find that reconciliation of the parties nullifies the emergency family maintenance provisions of a protective order, where there has been no modification or rescission of the protective order during the term of the protective order. Central, and critical, to this argument is the notion that, by enacting § 4–507(a)(1), the General Assembly provided the only method by which protective orders could be modified or rescinded—it must be done by the court that issued the protective order, during the term that the protective order is in effect and after notice to all affected eligible persons and the respondent, and a hearing. It is also of significance to the petitioner that the General assembly did not include "reconciliation of the parties" as a basis for the modification, rescission or nullification of protective orders.

Thus, the petitioner asserts:

"Application of Section 4–507(a) to the facts of the subject case requires a simple disposition. The protective order here had a term from June 22, 1995 to January 8, 1996. The record of proceedings of this case do not show request, hearing or order modifying or rescinding the subject protective order during the term of that order. Therefore, the provisions of the protective order, including the provision for emergency family maintenance remain intact and can not be modified or rescinded where no attempt to do so took place during the term of the order. . . .

"Section 4–507(a) set up a statutory barrier to modification or rescission of a protective order and its provisions after its term. In June, 1998, over two years after the term of the subject protective order, the Circuit Court 'nullified' this protective order due to acts of the parties that the Circuit Court determined in June, 1998, to amount to reconciliation. By creating a method for nullifying or rescinding this protective order not provided by the legislature in Section 4–507(a) the Circuit Court was operating contrary to the clear provisions of Section 4–507(a) by permitting the par-

ties, rather than a court, to effectively rescind the protective order."

Alternatively, the petitioner submits that, even if § 4–507(a)(1) does not prescribe when a modification or rescission of a protective order must occur, it clearly prescribes by whom the modification or rescission must be made: by the court that issued the protective order and "not by acts of parties amounting to reconciliation." In that regard, she seeks to draw a distinction between *Thomas* and the case *sub judice,* pointing to this Court's discussion in that case of the history of the award of alimony, clearly indicating that alimony is separable from a divorce decree in which alimony is awarded. By way of contrast, the petitioner points out that emergency family maintenance does not, and indeed cannot, exist apart from the protective order. Also significant to the petitioner is the fact that *Thomas* did not hold that the parties' reconciliation nullified or rescinded the divorce decree, only the alimony award, and that § 7–102(d) [7] of the Family Law Article permits the court that granted the *a mensa* divorce to revoke it. She observes, as to the latter: "Clearly, revoking an *a mensa* divorce decree can only be done exclusively by a court. Appellant notes the similarity in the form of that language to Section 4–507(a) applicable here in terms of by whom a protective order can be modified or rescinded."

The petitioner's focus then is not on the sufficiency of the facts to establish that the parties did indeed reconcile or even on whether their reconciliation could, or did, have any effect on the question whether to modify or rescind the protective order or any of its provisions; as we have seen, none of those questions concerns her. In fact, as we also have seen, the petitioner concedes that the sufficiency of the evidence of reconciliation is not an issue on this appeal and that the parties' reconciliation may affect the protective order and may even be a basis for its modification or rescission, so long as it

---

7. That section provides:
 "The court that granted a decree of limited divorce may revoke the decree at any time on the joint application of the parties."

is offered as such during the term of the protective order and is found by the issuing court to have occurred.[8] Her argument is directed, rather, to the timing of the modification or rescission of the order—it must occur during the term of the order—and by whom the modification or rescission can be made—only the court that issued the order may modify or rescind it. It is also of some significance that, to the petitioner, a modification or rescission of the order occurs any time there are acts that, if proven, would render the order unenforceable. To the petitioner, in short, unless the protective order or its provisions are modified or rescinded, by the issuing court, prior to the expiration of its term,[9] matters inconsistent with the order's viability or enforceability either are irrelevant or are not properly raised to defeat enforcement.

 Section 4–507, as relevant, provides:

"(a) Modification or rescission of orders generally.—(1) The court that issued the protective order may modify or rescind the protective order during the term of the protective order after:

"(i) giving notice to all affected persons eligible for relief and the respondent; and

"(ii) a hearing."

Applicable to the modification or rescission of protective orders, by its terms, as the petitioner maintains, it permits the court issuing the protective order, "during the term of the protective order," to modify or rescind it, after notice to the respondent and "all affected persons eligible for relief," and a

---

8. The reconciliation must, of course, be bona fide; a forced "reconciliation," one that is not voluntary or is made necessary by the actions of one of the parties, *i.e.*, by failing to make the required payments and thus forcing the other to return to the family home to obtain support, will not suffice. The bona fides of the reconciliation is an element of the proof of the reconciliation.

9. The petitioner conceded in her reply brief that the modification or rescission could be the *sua sponte* act of the court and need not be initiated by any of the parties.

hearing. And, also as the petitioner contends, the language of the statute is clear and unambiguous. It is well settled that the cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996) and cases cited therein. To that end, "we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Thus, the petitioner is correct, modification or rescission of a protective order must occur, by the court that issued it, during the term of the order and after notice and a hearing.

But this is not an action to modify or rescind the protective order. It is, instead, an action to enforce provisions of an expired protective order. There is a difference between an action to modify or rescind a protective order and one to enforce a protective order that has not been modified or rescinded, and is no longer capable of being modified or rescinded. That neither the respondent nor the Court of Special Appeals argues the distinction does not make the distinction any less real. *See Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 33, 720 A.2d 912, 913 (1998) (noting that after rabbi sought confirmation and enforcement of arbitration award, attorney fees, and sanctions, Synagogue petitioned to modify or vacate award). Nor does the fact that the same evidence, depending on the context, can serve both purposes.

■ The petitioner concedes that the reconciliation of the parties may be the basis for the modification of the protective order during the term of the order. Presumably, that is because of the impact of the reconciliation on the need for the protective order or, in this case, the emergency family maintenance provision of that order. The effect of a reconciliation is the same whether reflected in a modified order or not. When

reconciliation is not the basis of a modified order, during the term of the order, proof of the reconciliation during the term of the order, and thus its effect on the protective order at that time, nevertheless may be offered by the respondent as a defense.

■ The petitioner is seeking to enforce the emergency family maintenance provisions of a protective order that has expired; she certainly does not want to modify or rescind the protective order. Nor is the respondent asking the court to modify or rescind the protective order. Instead he is interested only in defending against the enforcement of the order. In that regard, there need not be a modification of the order for there to be a successful defense, only the establishment of a reason for the court not to allow enforcement.

To the petitioner, there is no difference between a defense offered to defeat enforcement of a protective order and any attempt to modify or rescind it. In other words, once the term of the protective order has expired, without being modified or rescinded as the statute requires, she believes that enforcement must follow inexorably; there simply is no defense. We do not agree that is correct.

■ We hold that, while § 4–507(a)(1) prescribes the method by which a protective order may be modified or rescinded, by whom and when, it does not address an enforcement action and it does not preclude the offer of a defense to such action, even if that defense consists of evidence that, had it been offered during the term of the protective order, would have been a basis for its modification or rescission.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.