69 A.3d 1

**Lawrence LA VALLE**

v.

**Janet LA VALLE.**

**No. 2, Sept. Term, 2007.**

Court of Appeals of Maryland.

June 26, 2013.

James S. Maxwell (Brian M. Barke, Maxwell & Barke, LLC, Rockville, MD), on brief, for Petitioner.

Jonathan D. Isaacs (Jonathan D. Isaacs, P.C., Rockville, MD; Debra Koh, Law Offices of Koh & Koh, Rockville, MD), on brief, for Respondent.

Argued before BELL, C.J., RAKER,* HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, specially assigned) and DALE, R. CATHELL, (Retired, specially assigned) JJ.

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

**BELL, C.J.**

The sole issue in this case is whether a court may extend a domestic violence protective order, pursuant to a motion timely filed during the term of the order, without also holding a hearing on the motion during the term of that order. We will answer this question in the negative, and conclude that Maryland Code (1984, 2006 Repl.Vol.) § 4–507(a) of the Family Law Article ("FL")[1] permits a domestic violence protective order

---

1. Maryland Code (1984, 2006 Repl.Vol.) § 4–507(a) of the Family Law Article ("FL"), which governs "[m]odification or recission of orders," provided:

 "(1) A protective order may be modified or rescinded during the term of the protective order after:

 "(i) giving notice to all affected persons eligible for relief and the respondent; and

 "(ii) a hearing."

 "(2) For good cause shown, a judge may extend the term of the protective order for 6 months beyond the period specified in § 4–506(g) of this subtitle, after:

 "(i) giving notice to all affected persons eligible for relief and the respondent; and

 (ii) a hearing."

 FL § 4–506(g), now recodified as Maryland Code (1984, 2012 Repl. Vol.) § 4–506(j), then provided:

 "*Duration.*—(1) Except as provided in paragraph (2) of this subsection, all relief granted in a final protective order shall be effective for the period stated in the order, not to exceed 12 months.

 "(2) A subsequent circuit court order pertaining to any of the provisions included in the final protective order shall supersede those provisions in the final protective order."

 Maryland Code (1984, 2012 Repl.Vol.) § 4–507(a) is identical to the previous version of the statute, in effect at the time this case arose before this Court, except that subsection (a)(2) now refers to "the period specified in *§ 4–506(j)*," which, similar to its predecessor, § 4–506(g), provides:

 "*Duration of relief granted.*—(1) Except as provided in paragraphs (2) and (3) of this subsection, all relief granted in a final protective order shall be effective for the period stated in that order, not to exceed 1 year.

 "(2) All relief granted in a final protective order shall be effective for the period stated in that order, not to exceed 2 years if:

 "(i) the court issues a final protective order under this section against a respondent on behalf of a person eligible for relief for an act of abuse committed within 1 year after the date that a prior final protective order issued against the same respondent on behalf of the same person eligible for relief expires; and

to be extended only upon a motion filed and a hearing on that motion held prior to the expiration of that order. In short, we hold that a court that is petitioned to extend a protective order is required, prior to expiration of the order, to hold a hearing to determine whether to extend that order.

## I.

This case arose out of a domestic altercation between the petitioner, Lawrence La Valle, and his wife, the respondent, Janet La Valle. Following the dispute, which occurred on the evening of May 25, 2006, the respondent filed, in the District Court of Maryland, sitting in Montgomery County, a Petition for Protection from Domestic Violence against the petitioner. On May 30, 2006, the District Court issued a Temporary Protective Order pending a hearing, after which, on June 21, 2006, a Final Protective Order, effective until October 10, 2006,[2] was issued against her husband. The order granted the respondent exclusive use and possession of the parties' marital home, and custody of the parties' minor son.[3]

---

"(ii) the prior final protective order was issued for a period of at least 6 months.

"(3) A subsequent circuit court order pertaining to any of the provisions included in the final protective order shall supersede those provisions in the final protective order."

2. The protective order was issued pursuant to FL § 4–506(c), which provides, in relevant part:

"(1) If the respondent appears before the court at a protective order hearing or has been served with an interim or temporary protective order, or the court otherwise has personal jurisdiction over the respondent, the judge:

"(i) may proceed with the final protective order hearing; and

"(ii) if the judge finds by clear and convincing evidence that the alleged abuse has occurred, or if the respondent consents to the entry of a protective order, the judge may grant a final protective order to protect any person eligible for relief from abuse."

3. In the petition for protection, the respondent alleged:

"May 20, 2006 at about 4 pm Sat ... I went downstairs to locate a birth cert[ificate] [because we were] going on vacation out of the country. Mr. La Valle started with verbal assaults, I ignored him—he continued. I went up stair [sic] to avoid further comments when I noted his keys on the kitchen counter. Aware that he keeps impor-

On September 14, 2006, prior to the expiration of the protective order, the respondent filed a motion, pursuant to FL § 4–507(a), to extend the protective order. *Supra* note 1. The court scheduled a hearing on the motion for October 3, 2006,[4] two days after expiration of the protective order. On September 29, 2006, the petitioner opposed the motion to extend the order on the grounds that there was no factual

---

tant documents in his car, I decided to take his keys and look in his car for the birth certificate. Mr. La Valle came out to the car and began pulling me from the car. I exited and ran into the kitchen. The key to the car was in my hand, he wrestled [sic] me throwing me onto the kitchen counter. I asked him to let me go. He then slammed my head onto the cabinet, all the while squeezing me in a wrestling [sic] hold. Attempting to get away from him, I turned my head (he was facing my back) and bite [sic]him on the r[igh]t shoulder so that he would release his hold. He released his hold and I ran toward my room which is upstairs.

"While climb[in]g the stairs Mr. La Valle grabbed my legs from under me causing me to fall onto the stairs. This left a large bruise on my left upper arm. He continued to pin me down.

"Our son returned home to find his father on top of his mother—on the stair way. I was crying and asked him to call 911. My husband was still restraining me in spite of all our child was witnessing.

"Finally my child cried out "Dad let Mom go!" He did, and we left-returning to the premises approximately one hour later. Mr. La Valle left the premises, were [sic] he remained gone until 4 pm the next day."

Thus, she indicated that the petitioner pulled her, threw her, held her, slammed her head, grabbed her legs, and pinned her down. The respondent also stated in the petition that the parties' minor son was present during some of these acts, and, at one point, inserted himself into the violent confrontation, in defense of his mother.

4. The respondent claims that the October 3, 2006 hearing date was agreed to by both parties. Aside from the fact that the respondent has failed to present any documentation in support of this assertion, we do not consider that question or fact to be outcome-determinative. *See State v. McCray*, 267 Md. 111, 126, 297 A.2d 265, 273 (1972) ("[J]uris-diction cannot be conferred on a court by waiver or consent of the parties."); *First Federated Commodity Trust Corp. v. Comm'r of Sec. for Maryland*, 272 Md. 329, 333–34, 322 A.2d 539, 542–43 (1974) ("[T]he decree of any judicial tribunal which is without jurisdiction in its fundamental sense is void, and the parties to that proceeding cannot, by their consent, confer jurisdiction on that court to hear and decide the issues in dispute." (internal citations omitted)); *Lewis v. Lewis*, 290 Md. 175, 179, 428 A.2d 454, 456 (1981) ("parties may not by consent confer jurisdiction upon this Court or the Court of Special Appeals.").

basis on which to extend the order, and that FL § 4–507(a)(1) allows extension only during the term of the original order.

At the October 3 hearing, the petitioner repeated the arguments raised in his opposition and, noting the status of the order, that the original protective order had expired, further argued that, at that time, pursuant to FL § 4–507, the court lacked the authority to grant an extension. Nevertheless, rejecting the petitioner's arguments, the District Court extended the protective order until March 1, 2007.[5]

The petitioner appealed that judgment to the Circuit Court for Montgomery County, which, after having held a *de novo* review, affirmed the District Court, and concluded that the requirement that a protective order be modified only during its term was satisfied if the request for an extension was filed prior to the expiration of the order. Thus, concurring with the District Court, the Circuit Court reasoned that, so long as a motion to extend a protective order is filed during the term of the protective order, that protective order may be extended, irrespective of when a hearing and argument on the motion is held; that they actually occur after the protective order has expired does not affect the validity of the extension.

The petitioner noted an appeal of that judgment to the Court of Special Appeals. Simultaneously, the petitioner filed, in this Court, a Petition for Writ of Certiorari. The intermediate appellate court transferred the "appeal" to the Court of Appeals pursuant to Maryland Rule 8–132.[6] We granted the

---

5. Subsequently, by motion filed on February 20th, 2007, nine days prior to expiration of the order, the respondent sought a second extension. On the expiration date, March 1st, the District Court again extended the protective order, this time prior to the hearing on the motion, which was set for March 16th, "until further order of the court." That "further order" was issued by the District Court on March 27th, 2007. It denied the respondent's motion to extend the duration of the order, reasoning that the Circuit Court's order in the petitioner's appeal of the first extension, affirming the District Court, divested it of any further jurisdiction to modify or extend the order. The propriety or correctness of that order is not at issue.

6. Maryland Rule 8–132 provides:

petitioner's petition for certiorari on April 11, 2007. *La Valle v. La Valle,* 398 Md. 314, 920 A.2d 1058 (2007). We shall reverse.

## I.

The respondent asserts that the matter before us is now moot, because the protective order in question expired in March, 2007, prior to the Court's grant of certiorari, the following month. The petitioner disagrees, however, explaining that, even though the order did expire, "the effects of both extensions may endure beyond the life of the protective order in question even as extended." We agree with the respondent, that the question with which we are presented is moot.

 This Court ordinarily does not render judgment on moot questions. *State v. Ficker,* 266 Md. 500, 506–07, 295 A.2d 231, 235 (1972). A case is considered moot when "past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church,* 227 Md. 338, 343, 176 A.2d 772, 775 (1962). See *Ireland v. Shearin,* 417 Md. 401, 406, 10 A.3d 754, 757 (2010); *Office of the Pub. Defender v. State,* 413 Md. 411, 422, 993 A.2d 55, 62 (2010); *Suter v. Stuckey,* 402 Md. 211, 219, 935 A.2d 731, 736 (2007) (citing *Dept. of Human Resources v. Roth,* 398 Md. 137, 143, 919 A.2d 1217, 1221 (2007); *Attorney Gen. v. A.A. County School Bus,*

---

"Transfer of appeal improperly taken. If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action."

The appeal to the Court of Special Appeals clearly was improper. As Maryland Code (1974, 2006 Repl.Vol.) § 12–305 makes clear, the case was not directly appealable to that court. That section, as relevant, provides that "[t]he Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court. . . ."

286 Md. 324, 327, 407 A.2d 749, 752 (1979)). Accordingly, in *Ficker*, we stated that, "[a]ppellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course." 266 Md. at 506–07, 295 A.2d at 235. The protective order at issue here expired by both its original and extended terms prior to the grant of certiorari by this Court. As such, although, as the petitioner argues, some consequences of the protective order may persist beyond its expiration, this appeal is nonetheless moot, because a decision by this Court would be without effect as to those consequences.

There is a limited exception to the mootness doctrine, however, which provides that "where a case, while technically moot, presents a recurring matter of public concern which, unless decided, will continue to evade review, we have nonetheless considered the case on its merits." *Office of the Pub. Defender*, 413 Md. at 423, 993 A.2d at 62 (citing *In re Julianna B.*, 407 Md. 657, 665–66, 967 A.2d 776, 780–81 (2009); *Suter*, 402 Md. at 220, 935 A.2d at 736; *Arrington v. Dep't of Human Res.*, 402 Md. 79, 91–92, 935 A.2d 432, 439–40 (2007); *Anne Arundel County Sch. Bus Contractors Ass'n*, 286 Md. at 328, 407 A.2d at 752; *Lloyd v. Bd. of Supervisors of Elections of Baltimore Cnty.*, 206 Md. 36, 43, 111 A.2d 379, 381–82 (1954).) Indeed, if a matter's "recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight." *Lloyd*, 206 Md. at 43, 111 A.2d at 382. Since this Court has consistently recognized "protection from domestic violence as a significant public policy concern to trigger review of moot cases," we will apply this exception, and, on that basis, decide the matter before us. *Stuckey*, 402 Md. at 221, 935 A.2d at 737. *See Katsenelenbogen v. Katsenelenbogen*, 365 Md. 122, 125, 775 A.2d 1249, 1251 (2001).

## II.

The petitioner argues that Maryland courts' routine extension of protective orders, for any reason after they have expired, violates FL § 4–507. In that regard, he submits that the clear and unambiguous statutory language of section 4–507 requires that any modification of a domestic violence protective order, including, but not limited to, its extension, must occur during its term. He relies on our opinion in *Torboli v. Torboli*, in which we noted that, pursuant to FL § 4–507, "modification or rescission of a protective order must occur, by the court that issued it, during the term of the order and after notice and a hearing." 365 Md. 52, 63, 775 A.2d 1207, 1214 (2001). The petitioner also advances the alternative argument that a protective order that has expired may not, and should not, be extended. He contends that an untimely extension does not, and cannot, relate back to the date of the filing of a motion to extend. This is so, he argues, because "to allow a protective order to be reinstated, after a hiatus, days after it has expired, places the party subject to the order in an uncertain legal status during the interim" and a court may always enter a new protective order for cause upon application.[7]

Conversely, the respondent argues that a trial court has the authority to extend a protective order, after notice and a hearing, when a party has filed a motion to extend that order prior to its expiration. She submits that the petitioner's reliance on *Torboli, supra,* for the proposition that a protective order must be extended during its term, is improper, because this Court's statement regarding the permissible time frame for modification or rescission was dictum. The respondent additionally points out that our holding in *Torboli* is not dispositive of the question before us since the issue presented in that case "involve[d] the effect of the parties' reconciliation

---

7. Although this argument has much to commend it and is persuasive, we believe the more appropriate ground for decision in this case is statutory interpretation. Accordingly, we will decide this matter by reference to the canons of statutory construction.

during the term of a protective order on the enforcement of an emergency family maintenance award, made as a part of the protective order, where the protective order was neither modified nor rescinded during its term and the enforcement petition was filed after the expiration of the term of the protective order," a wholly separate issue from that before us in this matter. *Torboli,* 365 Md. at 54, 775 A.2d at 1208–09.

The respondent challenges the petitioner's interpretation of FL § 4–507(a) as violative of the canons of statutory construction. Specifically, the respondent contends that the petitioner reads the language, "during the term of the protective order," in isolation from the remainder of section (a), thus leading him to the erroneous conclusion that the language of the statute is unambiguous. Instead, the respondent submits that the language, viewed in context of the entire section, is ambiguous. That being so, she states that we must look to the legislative intent underlying it for guidance. Concluding that the intent of the Legislature in enacting the domestic violence statute was to protect those subject to abuse from potential further harm, while considering the procedural rights of the alleged abuser, the respondent explains that it would, therefore, "be illogical and inconsistent with [this] legislative intent to place the onus on the person seeking further protection from abuse to have to concern herself (or himself) with whether or not a hearing on her timely motion for extension can be held before the expiration of the protective order," and "illogical to deprive a person eligible for relief of a hearing on her motion for extension simply because there may be a short delay in the Court conducting the hearing, whether it be due to a scheduling conflict of the petitioner, the responding party, Counsel for either party, the Court, inclement weather, or other circumstances beyond anyone's control."

In answering the question this case presents, we must consider whether, by expressly addressing the extension of a protective order, after having provided for modifications and rescissions, and, in doing so, omitting the phrase used by the Legislature to define when a modification or rescission can be made, the General Assembly intended for there to be a

difference between the handling and timing of modifications and extensions of protective orders.

 Our goal, in interpreting § 4–507, "is to determine the intention of the legislature in enacting it." *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000). *See Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Jones v. State,* 336 Md. 255, 260, 647 A.2d 1204, 1206 (1994). In so doing, we direct our analysis, at the outset, to the plain language of the statute in question. *Jones,* 336 Md. at 261, 647 A.2d at 1206. We do not view this plain language "in rote fashion and in isolation," but, instead, keep in mind that "[t]he 'meaning of the plainest language' is controlled by the context in which it appears." *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 514, 525 A.2d 628, 632 (1987) (quoting *Guardian Life Ins. Co. of America v. Ins. Comm'r,* 293 Md. 629, 642, 446 A.2d 1140, 1147 (1982)). Nevertheless, "[i]f the words of a statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written," and our inquiry ends there. *Jones,* 336 Md. at 261, 647 A.2d at 1206–07. *See Oaks,* 339 Md. at 35, 660 A.2d at 429; *Chase,* 360 Md. at 128, 756 A.2d at 991. In the course of our interpretation, we must be sure to consider the whole context or scheme in which a statute appears. *Ins. Co. v. J.T.W.,* 397 Md. 71, 81, 916 A.2d 235, 241 (2007) (citing *Chow v. State,* 393 Md. 431, 433, 903 A.2d 388, 395 (2006)); *Blake v. State,* 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006). In so doing, we make every effort to read the statute in such a way "that no word, clause, sentence or phrase is rendered superfluous or nugatory." *Collins v. State,* 383 Md. 684, 691, 861 A.2d 727, 732 (2004); *See Fisher v. Eastern Correctional Inst.,* 425 Md. 699, 706, 43 A.3d 338, 343 (2012); *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005).

As we have seen, FL § 4–507(a) provides:

"(1) A protective order may be modified or rescinded during the term of the protective order after:

"(i) giving notice to all affected persons eligible for relief and the respondent; and

"(ii) a hearing.

"(2) For good cause shown, a judge may extend the term of the protective order for 6 months beyond the period specified in § 4–506(g) of this subtitle, after:

"(i) giving notice to all affected persons eligible for relief and the respondent; and

"(ii) a hearing."

We construed section (1)(a) in *Torboli v. Torboli*, 365 Md. 52, 63, 775 A.2d 1207, 1214. We concluded that it was clear and unambiguous, and, applying the well settled cardinal rule of statutory construction, we construed the phrase, "during the term of the protective order," to mean, literally, while the protective order is effective, when it is valid. Specifically, we explained: *"modification or rescission of a protective order must occur, by the court that issued it, during the term of the order and after notice and a hearing." Id.* (Emphasis added). We affirm our position in *Torboli.* The issue in *Torboli v. Torboli,* however, is not the issue presented in this case, the timing, and propriety, of extending a protective order after it has expired. Rather, we addressed in that case an action to enforce the provisions of an expired protective order. 365 Md. at 63, 775 A.2d at 1214.

Section 4–507(a)(2), which directly and expressly mentions the extension of a protective order, and does not contain the phase, "during the term of the protective order," was not an issue in *Torboli* and, therefore, was not addressed in that case. Additionally, we did not address, in *Torboli,* the meaning of "modification," as used in subsection (a)(1). This is a necessary step in our inquiry in this case, since, in order to discern whether the time limit of subsection (a)(1) applies to extensions under subsection (a)(2), we must determine whether a "modification" encompasses an extension.

■ Looking, first, to the plain language of subsection (a)(1), a "modification" is defined, as relevant, by the Merriam–Webster Dictionary as "the making of a limited change

in something," or "the result of such a change." "Extension," in turn, is defined as "an increase in length of time," specifically, "time allowed under agreement or concession." Applying these definitions, it is clear that the extension of the term of a domestic violence protective order, under FL § 4–507, is a "limited change" to such an order, and, therefore, a modification of that order. Thus, it is clear to us that subsection (a)(1) sets forth the time limitations for all changes that may be made to a protective order, including extensions to such orders. Subsection (a)(2), on the other hand, defines when an extension may be granted, when good cause has been shown, and specifically prescribes the permissible length of time—6 months—for which the duration of an order may be extended.

We addressed the Legislature's purpose in enacting the domestic violence statute, FL §§ 4–501 through 4–516, in *Coburn v. Coburn,* as follows:

"[I]n 1980 the Maryland General Assembly enacted the domestic violence statute (the statute). §§ 4–501 through 4–516. The statute grants courts the power to issue civil protection orders, which can prohibit a perpetrator of domestic violence from, among other things, abusing, contacting or harassing the victim. *See* § § 4–505 and 4–506. Through the statute, victims of domestic abuse are offered access to the judicial system to seek emergency relief and protection from their abusers. It has been reported that fourteen-thousand victims sought relief from abuse through filing petitions for temporary protective orders in the courts of this state in 1994 alone. Christina Asquith, Domestic Abuse Cases Multiply, The Baltimore Sun, November 5, 1995, at 1C, col. 7.

"The purpose of the domestic abuse statute is to protect and 'aid victims of domestic abuse by providing an immediate and effective' remedy. *Barbee v. Barbee,* 311 Md. 620, 623, 537 A.2d 224, 225 (1988). The statute provides for a wide variety and scope of available remedies designed to separate the parties and avoid future abuse. Thus, the primary goals of the statute are preventive, protective and remedial, not punitive. The legislature did not design the statute as

punishment for past conduct; it was instead intended to prevent further harm to the victim."

342 Md. 244, 252, 674 A.2d 951, 955 (1996). In light of this purpose, it would be illogical to conclude that a court could extend the duration of a protective order after it has already expired. Since "the primary goals of the statute are preventive, protective and remedial," an interpretation of FL § 4–507(a) that allows a lapse in the duration of the domestic violence protective order, during which time a victim, who has presumably filed a motion to extend, and is waiting for a hearing date, may be "contact[ed], abuse[d], or harass[ed]," would run afoul of this purpose, and would undermine the objective of providing an "immediate and effective remedy" to the victim. *Id.*, 342 Md. at 252, 674 A.2d at 955 (quoting *Barbee*, 311 Md. at 623, 537 A.2d at 225). Had the Legislature intended to provide for the extension of the duration of a protective order after expiration, surely, in keeping with its purpose, it would have made specific provision, in § 4–507(a)(2), or elsewhere, for the order to remain in effect immediately upon the motion being filed. It did not, however, do so. In such circumstances, the canons of statutory construction require that we take the Legislature at its word. *The Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) ("If there is no ambiguity in [statutory] language . . . , the Legislature is presumed to have meant what it said and said what it meant." (internal citations omitted)).

 The Legislature's intent as to the necessary prerequisites to obtaining a modification of a protective order is clearly revealed, and stated, in FL § 4–507(a). Because every extension of a protective order necessarily is a modification of that order, applying those prerequisites to extensions is consistent with that intent. Consequently, we hold section 4–507 does not permit a court to extend an expired protective order, even when the motion to extend such order was timely filed during the term of the order. An expired protective order no longer exists, and an untimely hearing cannot revive it.

JUDGMENT OF THE CIRCUIT COURT FOR MONT-
GOMERY COUNTY REVERSED. CASE REMANDED
TO THAT COURT WITH INSTRUCTIONS TO REVERSE
THE JUDGMENT OF THE DISTRICT COURT OF MA-
RYLAND, SITTING IN MONTGOMERY COUNTY. COST
TO BE PAID BY THE RESPONDENT.