*556 Dissenting Opinion by
Getty, J.
Respectfully, I dissent.
To briefly summarize the central facts of this case, the Circuit Court for Baltimore City issued a series of separate commitment orders mandating that Appellants, criminal defendants who had been found incompetent to stand trial and dangerous, be committed to the care of Appellee, Maryland Department of Health (“MDH”) at the Clifton T. Perkins Hospital (“Perkins”)[1] within one day after the date of each respective commitment order. Majority Op. at 527, 581-34, 168 A.8d at 862, 864-65. Appellants subsequently brought suit challenging an MDH policy that resulted in a delay in their admission to Perkins as a violation of the statute authorizing their commitment and of the Maryland Declaration of Rights. Id. at 532-36, 168 A.3d at 864-66. MDH brought a motion to dismiss those claims, pointing out that all Appellants had ultimately been admitted to Perkins within 12 to 36 days from the date of their respective commitment orders. Id. at 533-34, 536-37, 168 A.3d at 865, 866-67. Thereafter, the trial court granted the motion to dismiss. Id. at 538, 168 A.3d at 867-68.
I would affirm the trial court’s grant of the motion to dismiss. In my view, the Appellants’ claims were moot because they had already obtained the relief they sought, namely, admission to Perkins. Although there are instances in which it is appropriate to address a moot question that may arise again and would otherwise evade review, this case is not one of them. As I shall explain, remanding this particular case for further proceedings will not resolve the rights of Appellants in the event that they are once again committed to MDH and once again face a delay in admission, or provide helpful guidance on a “recurring matter of public concern.” See La Valle v. La Valle, 432 Md. 343, 352, 69 A.3d 1 (2013) (quoting *557 Office of Pub. Def. v. State, 413 Md. 411, 423, 993 A.2d 55 (2010)).
Furthermore, I write out of concern that the Majority has failed to address a critical issue raised by the facts of this case—-whether a trial court has the authority to set a binding deadline by which MDH must place a defendant committed to its custody in an inpatient psychiatric treatment facility. I doubt that a trial court has the authority to set such a deadline without, at a minimum, conducting a hearing and making findings of fact that such a deadline is necessary to prevent a violation of a defendant’s due process rights. Moreover, trial courts should be mindful of the limited number of beds available in inpatient facilities and give substantial deference to MDH’s policy and determinations as to the timing of admissions to those facilities. Therefore, I would hold that trial courts should generally refrain from imposing admission deadlines unless there are extraordinary circumstances that necessitate a rapid or immediate admission to inpatient care.
A. Mootness
“A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy.” Hammen v. Balt. Cty. Police Dep’t, 373 Md. 440, 449, 818 A.2d 1125 (2003) (quoting Coburn v. Coburn, 342 Md. 244, 250, 674 A.2d 951 (1996)). This Court generally dismisses moot cases without deciding the merits of the controversy, in order to avoid issuing advisory opinions or resolving purely academic questions. See Green v. Nassif, 401 Md. 649, 655, 934 A.2d 22 (2007); In re Riddlemoser, 317 Md. 496, 502, 564 A.2d 812 (1989).
However, the Court has the authority to express its opinions as to moot questions, and has done so in some limited circumstances. One of those limited exceptions is when a moot question is “capable of repetition, yet evading review.” Majority Op. at 541, 168 A.3d at 869 (quoting State v. Parker, 334 Md. 576, 585, 640 A.2d 1104 (1994)). The exception generally *558 applies when “(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.” Id. (quoting Parker, 334 Md. at 585, 640 A.2d 1104). A court may also apply the exception to consider a moot issue even when it is “unlikely that the same party will be subject to the same action,” so long as the issue is “of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate[,]” Id. As the Court explained in La Valle, when a matters’ recurrence
will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then [the] Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.
432 Md. at 352, 69 A.3d 1 (quoting Lloyd v. Bd. of Supervisors of Elections of Balt. Cnty., 206 Md. 36, 43, 111 A.2d 379 (1954)).
Here, prior to the trial court’s grant of the motion to dismiss, each of the four Appellants had obtained the relief sought in their Complaint, namely, admission to Perkins. Thus, Appellants’ claims would ordinarily be deemed moot, and the trial court’s grant of the motion to dismiss upheld on that basis. The Majority, however, declines to hold that Appellants claims are moot. The Majority believes that Appellants may, at some point in the future, again “be the subject of a commitment order.” Majority Op. at 541, 168 A.3d at 869. According to the Majority, in such event “[t]he question whether, and to what extent, the judge who issues that commitment order may specify a deadline for admission of the Appellant to Perkins and whether MDH’s admission policy complies with the statute and Constitution would likely again be an issue.” Id. And, the Majority notes that if one of the Appellants were to “again challenge[] any delay under the MDH policy in his or her admission to Perkins, it seems likely *559 that the Appellant would again be admitted to Perkins before that challenge reaches this Court.” Id. Furthermore, the Majority concludes that even if the individual Appellants do not face the same circumstances again, Appellants’ Complaint “alleges that the Appellants’ experience is not unique and that other criminal defendants found to be incompetent have experienced similar delays. Id. at 541, 168 A.3d at 869. Therefore, the Majority would decline to dismiss the appeal as moot. Id.
It is highly speculative to suggest that, simply because Appellants have once been the subject of a commitment order, there is a “reasonable expectation” that at some point in the future they will once again be the subject of a commitment order, and once again face a delay in admission due to MDH policy. However, even if the Majority is correct that this case is capable of repetition as to these particular defendants, the Court should still hold Appellants’ claims to be moot, as there is no point to remanding the case and expending further judicial resources to resolve their remaining claim.
Appellants’ sole surviving claim[2] on remand is that the MDH policy “as-applied” to their respective cases caused a delay in admitting them to Perkins that was sufficiently unreasonable as to violate the substantive due process guarantees of the Maryland Declaration of Rights. Id. at 550-52, 555, 168 A.3d at 874-76, 877-78. But, the Majority holds that weighing such a claim involves a totality of the circumstances inquiry, including “the nature of the defendant’s disorder, the circumstances of the defendant’s confinement at the pretrial detention facility, the treatment needs of the defendant, the treatment needs of other patients at the hospital facility, the need to provide a setting to deal with the nature of the dangerousness found by the court "with respect to that defen *560 dant, the basis for a policy that results in a wait list, and the experience under that policy.” Id. at 552, 168 A.3d at 876.
Therefore, judicial resolution of Appellants’ as-applied substantive due process claim will involve a detailed, fact-specific judicial inquiry into the circumstances that existed at the time of Appellants’ commitment order and delay in admission to Perkins—circumstances that existed over a year from the date of this opinion. The court will thus need to evaluate each Appellant’s mental state, circumstances, and treatment needs that obtained over a year ago, as well as the previous state of MDH policy and basis for that policy. This will doubtless be a difficult inquiry; Appellants are no longer in treatment at Perkins, and MDH will be required to expend significant time and resources to track down records and personnel pertaining to their stay at Perkins.
More importantly, such an inquiry is simply unnecessary. If the Majority is correct and one or more Appellants are once again ordered committed for psychiatric treatment at some time in the future, their own mental state and treatment needs will doubtless have changed from what they were in 2016, as will the needs of others committed to MDH and, in all likelihood, MDH policy regarding the wait list for admission. The trial court’s resolution of Appellants’ instant claim will thus simply have no application to a future delay in admission involving one of the Appellants.
Nor is the resolution of Appellants’ claim likely to have a broader impact on other criminal defendants facing a delay in admission to MDH treatment facilities. Appellants filed a motion with the trial court to be certified as the representatives of a plaintiff class under Maryland Rule 2-231. But given the highly individualized nature of an “as-applied” substantive due process, which is dependent on the specific facts of a given defendant’s condition, it is difficult to envision how Appellants could meet the requirements of class certification for that claim. In the absence of a class certification, further proceedings as to Appellants substantive due process claim will not provide relief to other defendants found incompetent who have *561 faced delays in admission to Perkins or other MDH facilities. And, while a Maryland appellate court’s resolution of a legal claim has binding precedential weight, a Maryland trial court’s holding does not. See e.g., Fraternal Order of Police Montgomery Cty. Lodge 35, Inc. v. Manger, 175 Md.App. 476, 491, 929 A.2d 958 (2007) (“There is no decision or statute which requires one nisi prius judge to accept as final and conclusive the decisions on the law before trial of another judge or court.”) (quoting Placido v. Citizens Bank & Trust Co. of Md., 38 Md.App. 33, 45, 379 A.2d 773 (1977)). Thus, the trial court’s resolution of the Appellants’ claim on remand will not necessarily be adopted or applied by other trial courts faced with delays in admitting criminal defendants to inpatient psychiatric treatment.
In short, now that Appellants have all been admitted to Perkins, Appellants’ claim presents a purely academic question, and the trial judge’s resolution of that claim will have no practical consequence or effect. Therefore, Appellants’ claim is precisely the kind of issue properly deemed moot,
B. Deadlines for Admission to an MDH Treatment Facility
As I have explained, a trial court conducting an after-the-fact examination of whether MDH’s wait list policy violated a defendant’s substantive due process rights is likely to be a waste of judicial resources. However, if a trial court is concerned that MDH policy is likely to result in a delay in admitting a criminal defendant who has been found incompetent to stand trial and dangerous to a treatment facility, and that the delay is likely to be of a duration and extent that it would violate the defendant’s substantive due process rights, the trial court could issue a deadline for admission in the commitment order itself. Indeed, that is exactly what occurred in the instant action—the Baltimore City circuit court issued commitment orders mandating that each Appellant be placed in Perkins within one day after the date of his or her respec *562 tive commitment order. Majority Op. at 532-34, 168 A.3d at 864-65.
The Majority opinion suggests that a trial court may have the authority to issue such a deadline for admission in a commitment order under the due process guarantees of the Maryland Constitution and Maryland Declaration of Rights. Majority Op. at 545-46,168 A.3d at 872. However, that suggestion raises significant legal and policy concerns that the Majority has not addressed.
First, at the time of a commitment order, a delay in admitting the defendant yet to occur, and the controversy between the defendant and MDH is not yet ripe. Thus, a deadline in a commitment order is in the nature of a prophylactic measure intended to prevent a violation of a defendant’s due process rights before it actually occurs. Courts have sanctioned such prophylactic measures in other contexts in order to preserve criminal defendants’ constitutional rights. See e.g., Smith v. State, 186 Md.App. 498, 512, 974 A.2d 991 (2009), aff'd, 414 Md. 357, 995 A.2d 685 (2010) (noting that the Supreme Court has consistently held that Miranda warnings are a prophylactic measure “designed to implement the under-girding Fifth Amendment privilege”). But, the Majority does not address or explain whether such a prophylactic measure is necessary in order to protect the rights of defendants who have been committed to the treatment of MDH.
Second, even if a trial court does have the authority to impose an admission deadline as a prophylactic measure, it would not be appropriate to do so for every defendant. As the Majority notes, not every delay in admission is per se unreasonable and a violation of a defendant’s substantive due process rights. Majority Op. at 551, 168 A.3d at 875 (“It is not the case that no delay at all in admission is tolerated by the due process clause.”). Instead, it is only when a delay is unreasonable “in relation to the purpose of treating the defendant while protecting both the defendant and the public” that a delay violates due process protections. Id. at 550, 168 A.3d at 874. Thus, at a minimum, a trial judge who desires to impose such a deadline on the basis of substantive due process should be required to conduct an inquiry into whether a deadline is necessary under the circumstances to protect the individual *563 defendant’s rights. After conducting such an inquiry, if a trial judge finds that a defendant is likely to face a delay in admission, and that delay is likely to violate his substantive due process rights, then a deadline may be appropriate.
In addition to the factors stated by the Majority, see id. at 552, 168 A.3d at 876, trial courts should be mindful that the General Assembly has not mandated a timeline by which MDH must admit a defendant committed to its care to an inpatient treatment facility. Furthermore, the record of this case reflects that MDH hospitals have recently been “operating at or above maximum capacity[,]” and thus may face great difficulties in immediately or rapidly admitting a particular defendant in response to a court order. Id. at 537,168 A.3d at 867. And, MDH is in the best position to assess the overall needs and dangerousness of all of the defendants committed to its care, and to determine from that information the order in which defendants are admitted as beds become available. For all those reasons, trial courts deciding whether to set a deadline for admission should generally be deferential to MDH’s wait list policy and be reluctant to “jump the line” by ordering that a particular defendant be admitted immediately or rapidly. Accordingly, I would hold that trial courts should generally refrain from imposing an admission deadline similar to the one seen in this case—a single day, or other relatively short period of time—unless there are extraordinary circumstances such that a defendant’s immediate or rapid admission to inpatient care is necessary.
C. Conclusion
Here, Appellants had already obtained the relief they sought prior to the trial court’s grant of MDH’s motion to dismiss and, consequently, their claims are moot. I would decline to apply the exception for review of moot claims that are “capable of repetition, yet evading review.” In my view, a remand to the trial court to conduct a further inquiry into Appellants’ surviving due process claim would not resolve Appellants’ rights in the event that they are once again committed to MDH for inpatient treatment. Nor would such *564 an inquiry provide relief to other defendants found incompetent who have faced delays in admission to Perkins, or provide direction to other trial courts faced with similar situations.
Moreover, the Majority’s holding today suggests that a trial court has the authority to issue a deadline for the admission of a defendant to an MDH facility to prevent a violation of the defendant’s substantive due process rights. I would hold that a trial court lacks the authority to impose such a deadline without, at a minimum, conducting an inquiry and making findings of fact that such a deadline is necessary to prevent a violation of a defendant’s substantive due process rights. Furthermore, I would hold that trial courts should generally defer to MDH policy and refrain from imposing such deadlines unless there are extraordinary circumstances that necessitate a rapid or immediate admission to inpatient care.
For the above stated reasons, I respectfully dissent.

. The commitment orders at issue specified Appellants be committed to Perkins or other facilities designated by MDH. Majority Op. at 533-34, 168 A.3d at 865. However, as the Majority notes, "individuals charged with serious crimes are generally committed to [Perkins], regardless of the location of the court that ordered the commitment.” Id. at 531-32, 168 A.3d at 864.

. I agree with the Majority’s conclusion that Count One of Appellants’ Complaint failed to state a claim for which relief could be granted. Majority Op. at 555, 168 A.3d at 877-78. And, I agree with the Majority that other claims raised by the Appellants that were not included in their Complaint or argued before the trial court were not preserved for this Court’s review pursuant to Maryland Rule 8-131. See id. at 547-48, 168 A.3d at 873.