# LLOYD *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE COUNTY

[No. 22, October Term, 1954.]

*Decided December 16, 1954.*

38

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Leo E. Lloyd, pro se,* as appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, W. Giles Parker, Assistant Attorney General,* and *Philip F. Bennett, Attorney for the Board of Supervisors of Elections of Baltimore County,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, on January 20, 1954, filed his certificate of candidacy for judge of the Orphans' Court for Balti-more County with the Supervisors of Election of that County. The printed form supplied him by the Board indicated that he could file only in the primary election of the party of his affiliation, the Democratic party. On January 27, 1954, the appellant notified the Board of his desire to file for nomination as a candidate for the same office in the Republican primary. The Attorney General of Maryland had ruled in 1946, 32 *Opinions, A. G.,* 160, that one seeking the office of judge of the Orphans' Court could file only in the primary of the party with which he was affiliated, on the ground that the Legislature intended that the statutory exception in the election laws, which permit a candidate for judge to file in more than one primary, applies only to judges of Circuit Courts, judges of the Supreme Bench of Baltimore, and judges of the Court of Appeals. The Board, following this ruling, notified the appellant that he could not cross-file. He then sought a writ of *mandamus* from the Circuit

Court for Baltimore County to compel the Board to accept his certificate of candidacy in the Republican primary. A demurrer to the petition was filed and, on May 12, 1954, was sustained. A final order, dismissing the petition, was entered on May 13, 1954. An appeal was filed, and the appellant made inquiry as to whether it could be advanced and heard before the election. Upon learning that the absentee ballots were being printed, he did not press for an early hearing and the appeal was heard in its regular course, months after the primary of June 28, 1954, in which he was unsuccessful, was over.

The chronology of the case makes it apparent that nothing this Court could do, by reversal or otherwise, could undo or remedy that which has already occurred. It is beyond our power to make a decision in the case which will bind any of the parties to it or accomplish any of the purposes for which it was brought or defended. The case was moot as to the parties when it reached us. Appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course. Appellant urges that there is an exception to this course of action, which is that a case will not be dismissed as moot if matters of importance and general public interest are involved under conditions such that they are likely soon to recur. He urges that the appeal before us comes within this exception and, therefore, we should decide the true construction of the election laws involved, under the authority of *Munsell v. Hennegan*, 182 Md. 15. We have been referred to three instances—and our own investigation has revealed no others—in which this Court has given its views on the questions raised, where the case as to the parties before the Court was moot. The first was *Close v. The Southern Md. Agr. Asso.*, 134 Md. 629, in which the Court held that statutes authorizing the circuit courts to issue licenses for race meetings with betting, were unconstitutional. A motion to dismiss the appeal because the license had expired before the appeal was

reached, was denied and the order of the lower court reversed because the appellants had done everything they could to have their case heard in time, the lower court could grant another license immediately, and: "* * * continue to grant them from year to year, as long as the present Statute remains in force, and it would not be just to it to leave the question undetermined, if there be no other reason why we cannot review the decision of that court." It was also pointed out in the opinion that it might well be that each time a license was granted, it would have expired before the appeal reached this Court, so that the determination of the constitutional question might be indefinitely delayed. The second case is *Sheehy v. Thomas,* 155 Md. 688, which dealt with the rights of riparian owners, as against strangers, to maintain duck blinds opposite their shore lines. The license issued was limited to the current hunting season and had expired before the case was heard on appeal. A motion to dismiss on this ground was denied and the case affirmed. The reason given was that: "* * * as riparian owners have a continuing right to the first choice annually for positions of blinds in the waters in front of their lands, it seems proper that, when a challenge of the right is of such a nature as to affect its recurring exercise, a decision of the question should not be refused merely because it could not be heard on appeal before the expiration of the current season for which were issued the licenses in operation when the suit was instituted." The third case is *Munsell v. Hennegan,* 182 Md. 15, *supra,* the case upon which the appellant relies. It dealt with a statute requiring candidates of any minority political party, as defined, to be nominated only by petition signed by a specified number of voters (who must certify that they intend to vote for the nominee and whose names must be published in a newspaper of general circulation), and which could be filed only if a fee of twenty-five cents for each name is paid. It was urged by the appellant, a member of the Communist party, that the unreasonableness of the requirements deprived him

of his constitutional rights to have his name go before the electorate. The appellee moved to dismiss the appeal on the ground that declaratory proceedings were not the proper method of raising the question and that the time for filing a petition of nomination, under any theory, had passed, so that the case was moot. The Court said only this: "We prefer to pass these questions without deciding them, and to base our conclusions upon the substantive questions raised, which in the public interest, we think should be decided."

It is to be noted that in none of the three cases did the Court cite any authority for its actions nor did it discuss the principle which controls the dismissal of moot cases, or the reasons why the principle was not followed. Appeals have been dismissed as moot by this Court consistently, both before and after the the decisions we have discussed. In *State v. Haas,* 188 Md. 63, where it dismissed as moot one of the two appeals, the Court expressed its concept of its duty in these words: "It was not the intention of the people of this State in establishing this court through the several constitutional enactments, that it should write treatises on the law. Its duty is to decide *bona fide* cases and disputes between the parties." The late cases which have dismissed appeals which were moot, include *Banner v. Home Sales Company D,* 201 Md. 425, 428; *Montgomery County v. Maryland-Washington Metropolitan Dist.,* 200 Md. 525; and *Eberts v. Congressional Country Club, Inc.,* 197 Md. 461, 464, where a number of the earlier cases are cited. Cases involving elections which have been dismissed as moot are *Thom v. Cook,* 113 Md. 85; *Dorsey v. Ennis,* 167 Md. 444; *Iverson v. Jones,* 171 Md. 649; and *Shub v. Simpson,* 196 Md. 177. See also 4 C. J. S., *Appeal & Error,* Sec. 1354, page 1949.

In cases where the matter is of public importance, this Court, from time to time, has dismissed an appeal where there was no right of appeal or where the appeal was premature, and yet has stated its views on the question presented. *Board of Medical Examiners v. Steward,*

203 Md. 574, 102 A. 2d 248; *State v. Haas, supra,* as to the one of the two appeals which was premature. (As has been noted earlier, the appeal which was moot was dismissed without discussion. The difference in treatment of the two appeals is significant.) In such instances, the controversy between the parties still lives, and the view of the Court on the questions raised are immediately pertinent and not merely general or advisory, in that they will control the future course of the controversy.

The dismissal by courts of moot cases has been grounded at times on constitutional limitations of power. Usually, however, courts accept as a rule of decision governing the exercise of jurisdiction, that a case which is moot will not be decided. The Supreme Court of the United States holds that it is without jurisdiction to decide the merits of a moot case. The Court has at times treated the limitation as constitutional, and at other times, has placed its decision upon the settled rule which governs the deliberation and adjudications of courts generally, namely, that they do not sit to decide abstract questions of law. *Robertson & Kirkham, Jurisdiction of the Supreme Court of the United States, by Wolfson & Kurland,* Sec. 257 and 271. This Court has generally treated the question as a rule of decision, it would seem. But see *State v. Shields,* 49 Md. 301, 305, 306; and *Hammond v. Lancaster,* 194 Md. 462, 471, *et seq.* Most appellate courts act under the exception which the appellant urges upon us as applicable in this case— namely, that they will not dismiss an appeal as moot if matters of importance and public interest will be affected by the decision and there is likelihood that if not then decided, they are likely soon to be repeated. See 1 C. J. S., *Actions,* Sec. 17; 4 C. J. S., *Appeal & Error,* Sec. 1354 (a); 14 Am. Jur., *Courts,* Sec. 49; and annotation in 132 A. L. R. 1185, 1191 and 1197. Despite its consistent dismissal of moot cases, the Supreme Court of the United States has refused to dismiss a case which is moot as to the parties, where it found the concurrence in sufficient weight of the factors which together add up to the excep-

tion.  *Southern P. Terminal Co. v. Interstate Com. Com.,*
219 U. S. 498, 55 L. Ed. 310, 316; *United States v. Trans-
Missouri Freight Association,* 166 U. S. 290, 41 L. Ed.
1007.

The courts of other jurisdictions, which recognize the
exception, have found difficulty in drawing the line which
separates the exception from the general rule of dis-
missal.  Those which we regard as the better considered
and reasoned cases take the view that only where the
urgency of establishing a rule of future conduct in mat-
ters of important public concern is imperative and mani-
fest, will there be justified a departure from the general
rule and practice of not deciding academic questions.
They hold that if the public interest clearly will be hurt
if the question is not immediately decided, if the matter
involved is likely to recur frequently, and its recurrence
will involve a relationship between government and its
citizens, or a duty of government, and upon any recur-
rence, the same difficulty which prevented the appeal at
hand from being heard in time is likely again to prevent
a decision, then the Court may find justification for de-
ciding the issues raised by a question which has become
moot, particularly if all these factors concur with suffi-
fient weight.

We find it unnecessary to decide, and we do not decide,
whether the practice of this Court in dismissing appeals
which are moot as to the parties, is because of a con-
stitutional lack of power or whether it is the application
of a rule of decision.  If we assume, without deciding,
that we agree with the courts which hold that the practice
is the application of a rule of decision, and with the
principles they use to determine when there is an excep-
tion, we find here none of the imperative and manifest
requirements necessary if the Court is to give an opinion
when the matter is moot as to the parties before the
Court.  The matter may be said to be of general public
interest only in the sense that any statute is, which
involves the whole state.  Moreover, it does not seem
likely that it will recur with any frequency, and if it

does again present itself, there need be no difficulty in having it passed upon by this Court as a live issue. The ruling of the Attorney General has not been previously challenged since it was given in 1946. The Legislatures which have met since 1946 have not seen fit to change the result which the opinion reached. There is involved no constitutional question which would tie the hands of the Legislature if it desired to permit candidates for judges of the Orphans' Court to file in the primary of both parties. If the Attorney General's conception of the legislative intent is wrong, any Legislature may so state in statutory form. If this is not done, the question certainly cannot recur for another four years, since there will be no election for the office of judge of the Orphans' Court sooner. If the Legislature does not act, there is no reason why a candidate for that office, who agrees with the appellant in this case, may not bring an action to compel cross-filing in which the decision of the lower court may be passed upon by this Court, before the election is held. Indeed, in the case at bar, the appellant was informed in February, months before the election, that he would not be permitted to cross-file, and there was sufficient time between the order of the lower court of May 13, 1954 and the election on June 28, for the case to have been advanced and heard well in time to translate the results here into effective action, if the decision below had been reversed.

For the reasons we have given, it is apparent that we consider the present case to be one which falls within the general rule and not within the exception.

*Appeal dismissed, with costs.*

BRUNE, C. J., dissents.