920 A.2d 511

**Loy DOVE, et al.**

v.

**Walter CHILDS, et al.**

No. 233, Sept. Term, 2006.

Court of Special Appeals of Maryland.

April 4, 2007.

**604**

Paul N. De Santis, Towson (Nevett Steele, Jr., on brief), Baltimore, for appellant.

Lawrence J. Gebhardt, Baltimore, for appellee.

Panel EYLER, JAMES R., SHARER, WOODWARD, JJ.

EYLER, JAMES R., J.

This case requires interpretation of the Maryland Mobile Home Parks Act of 1980, Maryland Code (2003 Repl.Vol.), §§ 8A101 to 8A–1803 of the Real Property Article ("the Act"), and Howard County ordinances regulating mobile home developments, specifically, § 16.516 of the Howard County Code.

The owners of a mobile home park, after giving notice to the tenants of their intention to close the park as of a certain date, sought and obtained a judgment of restitution of possession, requiring the tenants to vacate the park. The tenants appeal from that decision and contend the court erred because the owners were not in compliance with the above laws.

Perceiving no error, we shall affirm the judgment.

### Factual and Procedural Background

Henry Meyn and Marie Meyn, spouses, and John and Evelyn Meyn, spouses, owned two adjoining parcels of land, consisting of 6.47 acres, located on Gorman Road in Howard County ("the property"). In 1955, the Meyns established Ev–Mar Mobile Home Village ("the Park") on the property. The property is zoned R–MH (residential—mobile home). Sometime after 1955, John Meyn and Marie Meyn died, leaving

their spouses, Henry and Evelyn, as the owners. Henry and Evelyn continued to operate the Park.

In June, 1997, Henry and Evelyn died. Walter S.B. Childs, an appellee, is personal representative of the estate of Henry Meyn, and J. Timothy Matlock, the other appellee, is personal representative of the estate of Evelyn Meyn. The estates were involved in litigation with each other, which resulted in a settlement agreement. Pursuant to that agreement, the two parcels of land were to be sold and the proceeds divided according to agreed upon percentages.

In January, 2003, appellees filed an application to change the zoning classification on the property. Appellees stated that their intention was to eventually close the Park and sell the property. The residents of the Park protested, and in February 2004, the County authorities denied the application.

In April, 2004, appellees entered into a contract to sell the property and to deliver it to the purchaser vacant and unoccupied. Also in April, 2004, the tenants in the Park formed Ev–Mar Village Residents' Association, Inc. to advance their interests.

On May 5, 2004, appellees sent notices to the tenants advising them that they were going to close the Park as of June 1, 2005. Appellees sent subsequent notices on May 10, May 21, June 23, August 6 in 2004, and on April 13, 2005. They also held meetings with the tenants. The notices provided that if the tenants did not vacate by June 1, 2005, appellees would proceed against them as holdover tenants. Appellees offered the tenants relocation assistance if they did not contest the closing of the Park.

In May, 2005, appellees surrendered their license to operate the Park.

On May 5, 2005, Ev–Mar Village Residents' Association, Inc. and individual tenants filed a complaint in the Circuit Court for Howard County against appellees, asserting fraud and violation of State and County statutes, including the Act and Howard County Code § 16.516. That action is pending.

On June 6, 2005, appellees initiated tenant holding over proceedings in the District Court of Maryland, in Howard County, against appellants,[1] the tenants who had not vacated the Park. Appellants filed a demand for jury trial, and the case was transferred to the Circuit Court for Howard County.

On July 5, 2005, appellees filed a motion for summary judgment of restitution of possession. The motion was supported by an affidavit from Walter S.B. Childs dated June 30, 2005, appellants' leases, the notices to appellants, and affidavits from some of the appellants.[2]

Appellants filed an opposition to the motion. They argued that the leases had not been properly terminated under the Act and the County Code because it could only be done in conjunction with a zoning change, and the attempted closure of the Park was unlawful. Appellants attached documents, demonstrating that appellees had mismanaged the Park, creating safety and health concerns. According to appellants, the attempted closure was motivated by a desire to retaliate because of appellants' opposition to appellees' requested zoning change and the fact that appellants formed a tenants' association. Thus, they alleged that appellees' action constituted a retaliatory eviction under the Act and the County Code.

On September 2, 2005, the circuit court held a hearing, and by order dated January 5, 2006 and docketed on January 9, it granted appellees' motion. In its accompanying opinion, the court explained that the rental agreements had terminated,

---

1. Appellants are Loy Dove, E. Vincent Patrick, Waverly Bryant, Kalvin and Elisabeth Evans, Peter and Venus McAndrews, William and Diana Staks, Audrey Pressley, Warren Alston, Walter Shelton, and Jennifer Hobler.

2. The affidavits were apparently filed by appellants in the pending case by Ev-Mar Village Residents' Association, Inc. and others against appellees, asserting fraud and violations of State and County statutes. Appellees included them in their motion for summary judgment in this case to show that some of the appellants acknowledged receiving actual notice of appellees' intention to close the Park. We note that appellants do not contend that they did not receive notice.

appellants had received proper notice, and appellees' actions did not constitute a retaliatory eviction.

Appellants requested a stay of the order, which was denied. Appellants did not post a bond.

On January 19, 2005, appellants filed a motion to alter or amend. Appellants attached (1) their first amended complaint, filed in the action seeking damages and injunctive relief, (2) materials relating to the legislative history of the Act, and (3) an Attorney General's opinion and a law review article, relating to the interpretation of the Act.

In late January to early February, 2006, appellants were removed under warrants of restitution. All appellants were removed by February 8, 2006.

### Contentions

Appellants contend that the court erred (1) in interpreting § 8A–202(c)(3) of the Act as permitting a change in use without a change in zoning, and (2) in failing to consider Howard County Code § 16.516, which provides protection over and above that provided in the Act.

Appellees contend (1) the issues presented are moot, (2) the proceedings initiated by them were tenant holding over proceedings, not evictions, (3) the leases had all been terminated by June 1, 2005, and (4) they complied with the holdover tenant provisions in § 8A–1702(b)(2) of the Act.

In a "corrected appendix" to their brief, filed in this Court, appellees included an affidavit from Walter S.B. Childs dated January 4, 2007. According to appellees, the affidavit is substantively the same as an affidavit they filed previously in this Court, in support of their motion to dismiss the appeal on the ground of mootness. We denied that motion.

Appellants, in their reply brief, assert that we should not consider the affidavit because it was filed too late.

The affidavit relates to the issue of mootness. We shall consider the affidavit, but as explained below, we shall not dismiss the appeal.

## Mootness

■ Appellees point out that the Park has been closed, the license to operate it has been surrendered, and the judgment of restitution of possession has been enforced. Thus, appellees conclude that, even if this Court found merit in appellants' claims, it could not provide a remedy.

Appellants argue that the questions raised are relevant to their claims for damages and attorney's fees in the action in which they are plaintiffs. In addition, appellants urge us to exercise our discretion and decide the issues because they raise important matters of public interest that are likely to recur. Pursuant to § 8A–1702(b)(2) of the Act, a bond must be posted in order to stay a judgment of restitution of possession, and according to appellants, it is likely that a mobile home park tenant will not be able to post a bond in sufficient amount.[3]

The Court of Appeals has explained:

" 'Generally, appellate courts do not decide academic or moot questions. A question is moot if, at the time it is before the Court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.' " *Attorney Gen. v. Anne Arundel Co. School Bus Contractors Assn., Inc.*, 286 Md. 324, 327, 407 A.2d 749 (1979). The Court of Appeals has recently made clear that, when moot questions are raised on appeal, this Court should dismiss the appeal on the ground of mootness. *Cottman v. State*, 395 Md. 729, 912 A.2d 620 (2006), slip. op. at 14.

There are, however, exceptions to the general rule that appellate courts will not decide moot questions. In *Cottman*, the Court of Appeals recognized that " '[t]here is a public benefit derived from published opinions, which is the reason appellate courts are sometimes willing to decide

---

**3.** Section 8A–1702(b)(2) requires a bond sufficient to cover "... all loss or damage which the park owner may suffer by reason of the resident's holding over, including the value of the premises during the time he shall so hold over...."

moot questions where it appears that there are important issues of public interest raised which merit an expression of our views for the guidance of courts and litigants in the future.'" *Id.* at 15, 912 A.2d 620 (Internal quotes and citations omitted.). This Court may reach the merits of a moot question " 'where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest. . . .' " *Albert S. v. Dept. of Health,* 166 Md.App. 726, 744, 891 A.2d 402 (2006) (quoting *Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954)).

In *Lloyd,* the Court of Appeals listed the circumstances under which Maryland appellate courts may decide moot issues:

[I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between the government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all of these factors concur with sufficient weight. 206 Md. at 43, 111 A.2d 379.

*Prince George's County v. Fraternal Order of Police, Prince George's County, Lodge 89,* 172 Md.App. 295, 303–304, 914 A.2d 199 (2007).

Because of the pending claims by appellants for damages and because the issues are important to the public and are likely to recur in the future with respect to other mobile home parks, we shall address the issues raised.

### Section 8A–202(c)(3) of the Act

Section 8A–202 regulates rental agreements between mobile home park owners and tenants. A park owner "shall offer all current and prospective year-round residents a rental agree-

ment for a period of not less than 1 year." § 8A–202(a). "Upon the expiration of the initial term, the resident shall be on a month-to-month term, unless a longer term is agreed to by the parties...." § 8A–202(b).

Subsection (c)(2), in pertinent part, provides:

Before the expiration of a 1–year term, or upon request of the resident at any time during a month-to-month term, a park owner shall offer to a qualified resident [4] a rental agreement for a 1–year period.

Subsection (c) (3) provides:

If the use of land is changed, all residents shall be entitled to a 1–year prior written notice of termination notwithstanding the provisions of a longer term in a rental agreement.

Appellants contend the word "use" in subsection (c)(3) is synonymous with change in zoning. Appellants argue that vacant land does not appear as a permitted use in an R–MH district under the Howard County Zoning Regulations (HCZR), suggesting that owning vacant land in an R–MH district is in violation of the zoning regulations. Appellants also rely on § 8A–1201 for the proposition that change in "use" is synonymous with a change in zoning. Section 8A–1201 provides:

When a mobile home park owner submits an application for a change in the land use of a park, the owner shall submit, as part of the application, a plan for alternative arrangements for each resident to be dislocated as a result of the change.

Appellants argue that "use" in the context of § 8A–1201 means a change in zoning and that this should be read in harmony with § 8A–202 (c)(3). Finally, appellants observe that the Act was designed to protect residents of mobile home

---

4. "Qualified residents" are year round residents who made rental payments on time, did not commit repeated violations of their rental agreement, and owned a mobile home that met the standards of the park. § 8A–202(c). Appellants were "qualified residents."

parks because of their vulnerability as persons who own a home but lease the land on which it is located. Thus, according to appellants, the Act should be interpreted to protect against the actions of appellees, described as changing the use to vacant land as a "pretext to allow for an unopposed application for a zoning change."

The Act must be put in historical perspective. When we do so, we have no difficulty in concluding that a change in "use" in § 8A–202(c)(3) is not synonymous with a change in zoning.

As a result of the increase in the use of mobile homes as permanent residences in the 1960's, and abuses by mobile home park owners, many states, including Maryland, enacted statutes designed to prevent abuse. *Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 575, 414 A.2d 1246 (1980). The Maryland General Assembly first enacted such a statute in 1976, the predecessor to the Act.

In *Cider Barrel,* residents of a mobile home park sued the park owner, challenging certain rules imposed by the owner. *Id.* at 577, 414 A.2d 1246. The owner, *inter alia,* contended the statute was unconstitutional because it effected a taking of his property. *Id.* at 578, 414 A.2d 1246. The owner argued that, under the statute, he could not prevent a tenant from selling his home in the park, could not refuse to approve a buyer, had to grant a 1 year lease to all new residents, could evict a resident only for 1 of 3 reasons, and could not terminate the landlord-tenant relationship even if he wanted to change the use of the property. *Id.*

In upholding the constitutionality of the statute, the Court observed:

> There is nothing in the Act which prevents the park owner from terminating the landlord-tenant relationship by methods other than eviction. With respect to residents, the Act does not prevent a park owner from refusing to renew an expired lease, or from providing by lease or by rule for the termination of a tenancy, upon reasonable terms, should he desire to discontinue his operations and thereafter change the use of his land. Indeed, such a lease or rule

would not be inconsistent with the remedial purposes of the Act .... (citations omitted). With respect to prospective residents, there is nothing to suggest that a park owner's refusal to approve a new resident would not be "reasonable" within the meaning of section 8A102 (b)(2) [5] if the basis for such a refusal was a desire to discontinue the business. Thus, there is insufficient evidence to show that the park owner has been permanently deprived of his right to use his land for purposes other than a mobile home park.

The Act, when originally enacted in 1980, did not contain subsection (c)(2) and (3). They were added in 1985, when Senate Bill 869 was enacted into law. *See* Laws of Maryland 1985, chap. 583. Senate Bill 869 recited that it was for the purpose of requiring that upon the expiration of a certain lease term, or upon request of a mobile home park resident at a certain time, a mobile home park owner offer a rental agreement for a specific period to certain mobile home park residents; requiring that certain mobile home park residents be given specific written notice of termination of mobile home park rental agreements under certain circumstances, and defining a certain term.

■ Among other things, the bill, when enacted, added subsections (2) and (3).[6] In our view, the clear intent was to provide mobile home park residents with protection from being forced to move on a frequent basis, without cause, but only as long as the property was used as a park, possibly to avoid constitutional problems. Change in "use" within the meaning of (c)(3) is not synonymous with change in zoning.

With respect to appellants' argument that vacant land is not listed as a permitted use in HCZR § 113.1, suffice it to say

---

**5.** This section provided that a mobile home park owner could reserve the right to approve the buyer of a mobile home in the park but the owner could not unreasonably withhold such approval. The provision now appears in § 8A–602 of the Act.

**6.** When enacted in 1985, subsection (3) provided for 6 months notice of termination. By amendment in 1994, 6 months was changed to 1 year. Laws of Maryland 1994, chap. 582.

that vacant land is not a use of land requiring zoning approval. In this case, the change in use was the cessation of use as a mobile home park to non-use.

■ Section 8A–1201 applies when there is an application for a change in zoning and is not applicable to the facts in this case.

Section 8A–1702 sets forth the requirements for initiating proceedings against tenants holding over after the termination of rental agreements. Subsection (b)(2) provides that a court shall enter judgment for restitution of possession if (1) the park owner had been in possession of the leased property, (2) the rental agreement had ended, (3) the resident had been given due notice to vacate the premises, and (4) the resident had refused to vacate.

■ Items (1) and (4) are not in dispute. As we have concluded that appellees were permitted to cease use as a mobile home park, and that this constituted a change of use under § 8A–202(c)(3), the rental agreements terminated no later than June 1, 2005. Thus, all of the elements in subsection (b)(2) were satisfied.

### Howard County Code § 16.516

The Act, in § 8A–1801, provides that its provisions may be supplemented by local law. Howard County enacted ordinances regulating mobile home parks.

The Act, in § 8A–1101, provides that a park owner may only evict a tenant for nonpayment of rent or for certain specified violations of law, a rule, or a rental agreement. Section 8A1301, entitled "retaliatory evictions," provides that a mobile home park owner may not evict a tenant for any of the following reasons:

(1) Solely because the resident or his agent has filed a written complaint, or complaints, with the park owner or with any public agency or agencies against the park owner;

(2) Solely because the resident or his agent has filed a lawsuit, or lawsuits, against the park owner, or

(3) Solely because the resident is a member or organizer of any tenant's organization.

The circuit court held that the statute required that the owners' motive must be "solely" retaliatory and the evidence was undisputed that appellees intended to change the use of the property. Thus, the motives could not be "solely" retaliatory. On appeal, appellants do not challenge that holding.

Instead, appellants argue that the court failed to consider the County ordinance, which contained different language. Section 16.516(c) provides that no mobile home park owner shall evict a tenant

(1) Because the resident or other occupant has filed a written complaint, or complaints, against the mobile home park owner or operator with any public agency or agencies;

(2) Because the resident or other occupant has filed a lawsuit, or lawsuits, against the mobile home park owner or operator; or

(3) Because the resident or other occupant is a member of any tenants'; or residents' organization.

Appellants argue that the County law does not require that the motive be solely retaliatory and whether it was in part retaliatory is a question of fact, thus defeating summary judgment.

We expressly do not decide whether and, if so, under what circumstances, the retaliatory eviction provisions may apply to a tenant holding over proceeding. We only address the situation before us in the context of appellants' limited contention.

With respect to any differences between the Act and local law, a local law cannot "diminish or limit any right or remedy granted" under the Act. § 8A–1801. This applies to owners as well as tenants. Section 8A–202(c)(3) recognizes that a mobile home park owner has the right to cease operating as a mobile home park, upon giving the requisite notice. At the end of the notice term, the owner had the right to initiate tenant holding over proceedings, as discussed above. The

retaliatory eviction provisions do not apply under these circumstances.

**JUDGMENT AFFIRMED.   COSTS TO BE PAID BY APPELLANTS.**