*Voters Organized for the Integrity of City Elections, et al. v. Baltimore City Elections Board, et al.*
No. 60, September Term 2016


**Election Law – Action by Registered Voter with Respect to Act or Omission in Violation of State Election Law – Mootness.**  Appeal of a circuit court's denial of motion for temporary restraining order that would have required election officials to create a special system of "inmate voting" in Baltimore City for the 2016 general election was moot when any court order granting such relief on the day before the election would have been without practical effect.  Maryland Code, Election Law Article, §12-201 *et seq.*

Circuit Court for Baltimore City
Case No. 24-C-16-005773
Argument: November 7, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 60
September Term, 2016

_____

VOTERS ORGANIZED FOR THE INTEGRITY OF
CITY ELECTIONS, ET AL.

V.

BALTIMORE CITY ELECTIONS BOARD, ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Wilner, Alan M. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by McDonald, J.
Watts, J., concurs.

_____

Filed: January 23, 2017

There is a medieval legend concerning a Danish king named Canute whose domain included the British Isles and Scandinavia.  To his contemporaries, his authority must have seemed boundless.  Canute was less impressed.  To demonstrate that his power was quite finite in the grand scheme of things, Canute invited his courtiers to the seashore where he commanded the incoming tide to halt – an order that was, as Canute intended to demonstrate, without effect.[1]

An appellate court may sometimes find itself in a situation when, due to time or other circumstances beyond its control, it is asked to issue an order that, like King Canute's command to the sea, would be without practical effect.  The appeal is said to be moot and, typically, the court dismisses it.  Such is the case with this appeal.

Appellants, Voters Organized for the Integrity of City Elections ("VOICE") and its founder Hassan Giordano, initiated this action just weeks before 2016 general election in the apparent hope of compelling Appellees, the State Board of Elections ("State Board") and the Baltimore City Board of Elections ("City Board" or "local board"), to establish a special system for "inmate voting" in Baltimore City for the 2016 general election.  Their complaint sought relief on behalf of individuals who were detained pretrial or were incarcerated as a result of a misdemeanor conviction, who were eligible to vote, and who

---

[1] *See* Henry of Huntingdon, *Historia Anglorum* (1154).  In some later versions of the story, King Canute is portrayed as himself believing that his powers were boundless and vainly commanding the tide to recede.  *See, e.g.,* K. Evans, *Canute and the Waves:  A Misunderstood Story* at <https://kellyaevans.com/nqhistory/waves-2/>.  The story was thus transformed from one of a leader giving a lesson in humility to one of a leader needing a lesson in humility.

wished either to register to vote or, if already registered, to cast a ballot in the 2016 general election.

While VOICE and Mr. Giordano may have had the laudable purpose of ensuring that those with the right to vote were able to do so, the timing and basis on which they took legal action raised a plethora of issues. The Circuit Court for Baltimore City denied their request for a broadly worded temporary restraining order ("TRO") on the ground that they had filed their complaint too late. Alternatively, the court concluded that, even if it overlooked the procedural default, they had failed to show, by the "clear and convincing evidence" standard in the statute, any act or omission by the election boards that threatened to change the outcome of the election.

The expedited appeal of the Circuit Court's decision was argued before this Court on November 7, 2016 – the day before the 2016 general election. We dismissed the appeal as moot that same day and indicated that the case would be remanded to the Circuit Court to consider any further request for a declaratory judgment in accordance with an opinion to be issued by this Court. This is that opinion.

# I
# Background

*The Complaint – Parties and Jurisdiction*

On October 28, 2016, less than two weeks before the 2016 general election, VOICE and Mr. Giordano brought this action against the two election boards in the Circuit Court for Baltimore City. In its complaint VOICE stated that it is a "watchdog organization" that is comprised of Maryland voters concerned about the integrity of elections in Baltimore

2

City and that operates "exclusively" in the City. Mr. Giordano was alleged to be a City voter and the founder of VOICE. The complaint did not identify any other members of VOICE or name any other individual plaintiffs.

The complaint sought injunctive and declaratory relief with respect to all City and State detention centers and correctional facilities within the jurisdiction of the Circuit Court. The complaint alleged that the Circuit Court had jurisdiction of the action under the State Election Law – in particular, Maryland Code, Election Law Article ("EL"), §12-201 *et seq.* That provision is limited in scope and requires prompt action by one who seeks to invoke it. In particular, under that provision, a registered voter may bring an action with respect to any act or omission "relating to an election": (1) that is inconsistent with the State Election Law and (2) that may affect the outcome of the election. EL §12-202(a). Such an action must be brought either within 10 days after the alleged act or omission became known to the plaintiff, or within a specified number of days after the election (depending on whether it is a primary or general election) – whichever of the two dates is earlier. EL §12-202(b). The complaint also invoked the Maryland Uniform Declaratory Judgments Act, Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §3-401 *et seq.*

*The Complaint – Factual Allegations*

The complaint appeared to relate the time of its filing to legislation enacted during the 2016 session of the General Assembly – specifically, Chapter 6, Laws of Maryland 2016 ("2016 legislation"). The 2016 legislation amended the statute that defines the qualifications for voting (EL §3-102) to limit the disqualification from voting for convicted

3

felons to the period of the individual's incarceration. Prior to that amendment, a convicted felon would have also been disqualified from voting during any period of probation or parole. The amendment was enacted by the General Assembly over the Governor's veto and became effective March 20, 2016.

The complaint then focused on two categories of individuals in custody who may be eligible to vote if they otherwise satisfy the general criteria applicable to all Maryland citizens[2]: (1) pretrial detainees who have not been convicted; and (2) individuals in custody only because they had been convicted of a misdemeanor offense.[3] (As will be seen below, however, the 2016 legislation had no effect on the voting rights of either of these categories of potential voters.) The complaint alleged that there were "hundreds" of individuals in State custody in those two categories who were eligible to vote.

The complaint alleged that "the lack of a State strategy governing inmate voter registration and the casting of ballots in the upcoming election infringes upon the fundamental right to vote" of those individuals. More particularly, the complaint faulted

---

[2] In order to become registered to vote, an individual must be a United States citizen, at least 16 years old, and a resident of Maryland at the time of registration. EL §3-102(a). An individual is disqualified from becoming registered to vote if the individual (1) is a convicted felon currently serving a sentence of imprisonment for that conviction, (2) is under guardianship for a mental disability and there is a court finding that the individual cannot communicate a desire to participate in voting, or (3) has been convicted of buying or selling votes. EL §3-102(b).

[3] The complaint also alluded briefly to a third category of imprisoned individuals who may be eligible to vote: convicted felons who had completed their term of incarceration, but who were detained awaiting a hearing on an alleged parole or probation violation. However, unlike the other two categories of inmates, the plaintiffs did not make further mention of this third category in the complaint and other filings.

the State, the counties, and Baltimore City for lacking a policy or plan to distribute ballots to pretrial detainees and incarcerated misdemeanants during the early voting period (October 27 through November 3, 2016) or on election day (November 8, 2016) and for not providing information about voting, voter eligibility, and voter registration during the intake process at detention centers and correctional facilities. The complaint alleged that, as a result, there would be "massive disenfranchisement" that threatened to affect the outcome of the 2016 general election. The complaint did not allege any details as to how the outcome of the election was likely to be affected.

*The Complaint – Causes of Action and Relief Sought*

Based on those factual allegations, the complaint alleged various causes of action and violations of the Election Law in six counts. It appears that some of the counts pertain to only one of the two defendant election boards, although the complaint is not always clear in that regard.

Count I, apparently directed at both the City Board and the State Board, alleged a violation of the right to register to vote, as provided in EL §3-102, with respect to pretrial detainees and individuals serving sentences for misdemeanor convictions.

Count II, apparently directed at the City Board alone, asserted that the local board had failed to carry out the powers and duties assigned to it by EL §2-202,[4] by not

---

[4] EL §2-202(b) lists various powers and duties of the local board of elections in each county and Baltimore City. Count II of the complaint specifically recited the responsibilities of a local board of elections for overseeing the conduct of elections within its jurisdiction, providing supplies and equipment for voter registration and voting, and establishing precincts and polling places. EL §2-202(b)(1), (3), (6).

5

establishing a plan to ensure the opportunity to vote by pretrial detainees and individuals serving sentences for misdemeanor convictions.

Count III, apparently directed at the State Board alone, alleged that the State Board had failed to carry out the powers and duties assigned to it by EL §2-102[5] by not establishing a Statewide plan to ensure the opportunity to vote by pretrial detainees and individuals serving sentences for misdemeanor convictions. That count also quoted State Board regulations that implemented same day voter registration at early voting centers. *See* COMAR 33.19.04.01 *et seq.*

Count IV, apparently directed at both election boards, alleged a violation of the statutes governing applications for voter registration. *See* EL §3-201 *et seq.* The complaint asserted that these violations arose from a failure of the two election boards to allocate resources to provide volunteers to assist pretrial detainees and individuals serving misdemeanor sentences with registration and voting.

Count V requested injunctive relief, presumably against both election boards, including a TRO, a preliminary injunction, and a permanent injunction, on the grounds that the plaintiffs (VOICE and Mr. Giordano) were threatened with irreparable harm, that the State would be "only slightly inconvenienced" by an injunction, and that the plaintiffs were

---

[5] EL §2-102(b) lists various powers and duties of the State Board. Count III of the complaint specifically recited the State Board's responsibilities to manage and supervise elections in the State and ensure compliance with election laws, to support and evaluate the activities of local election boards, and to maximize the use of technology in elections. EL §2-102(b)(1), (2), (7).

likely to succeed on the merits of their claims. Count V did not itself specify the nature of the requested injunctive relief.

Count VI requested declaratory relief, again presumably against both election boards, although, like Count V, it was not specific as to the declaration of legal rights that it sought.

*The Complaint – Relief Sought*

Finally, in a concluding prayer for relief, the complaint became specific as to what it asked the court to do. As will be evident, much of the relief sought would extend beyond Baltimore City throughout the State and some would appear to extend beyond the 2016 general election. In particular, the complaint asked the Circuit Court to order:

    a. That all pre-trial detainees and individuals serving a court-ordered period of imprisonment for misdemeanor offenses who are eligible to vote, shall receive an official ballot and the opportunity to cast it on November 8, 2016 for the general election, or during early voting (October 27, 2016 – November 3, 2016);

    b. That voting and election information including the opportunity to register shall be provided within 8 hours upon booking into each facility throughout the State of Maryland within the jurisdiction of this court;

    c. That all pre-trial detainees and individuals serving a court-ordered sentence of imprisonment for misdemeanor offenses at a facility owned by the State of Maryland shall be provided with accurate education on their right to vote and the process for exercising that right;

    d. That all pre-trial detainees and individuals serving a court-ordered period of imprisonment for misdemeanor offenses, who are duly registered to vote, shall be provided with a copy of the official general election ballot to review ballot questions, candidates and proposed funding questions relevant to their jurisdiction;

7

e. That the State and local board cover the cost of providing ballots to all eligible persons in a timely fashion that are clear and legible;

f. That the State and local board account for and maintain control over the ballots from the beginning of production to post-election storage and disposition in accordance with [EL] §9-216;

g. That each ballot cast by all eligible persons in their institutions be counted;

h. That the State and local boards provide a polling place in each facility to allow an efficient voting process and reduce the possibility of missing ballots, irregularities or allegations of disenfranchisement.

*Motion for TRO and Opposition*

On October 31, 2016, several days after filing the complaint, VOICE and Mr. Giordano filed a motion for a TRO. That motion reiterated the allegations of the complaint and recited generally the powers and duties of the two election boards under State law. In their motion, VOICE and Mr. Giordano argued that the two election boards had failed to "comply with and implement" EL §3-102 – the statute that sets forth the qualifications an individual must meet in order to be eligible to vote.[6]

In arguing that the two election boards had violated EL §3-102, the motion also inaccurately stated that the 2016 legislation that amended that statute had "restored" the right to vote for pretrial detainees and individuals serving sentences for misdemeanors.[7]

---

[6] *See* footnote 2 above.

[7] In fact, the legislation did not concern the voting rights of pretrial detainees or individuals serving misdemeanor sentences – such individuals were eligible to register to vote both before and after the enactment of the 2016 legislation. The effect of that legislation was to extend voting rights to convicted felons who are on probation or parole and are not in custody – *i.e.*, not inmates. Whatever obligations the election boards may

8

The motion asserted that the State had not "place[d] any mandate upon jailers to implement . . . 'inmate voting'" after passage of the 2016 legislation. In the motion VOICE and Mr. Giordano argued that their cause of action did not accrue until October 19, 2016 – the day after the deadline for voter registration for the 2016 general election.

In the motion, VOICE and Mr. Giordano argued that the alleged failures of the two election boards "may change the outcome of the general election" and that VOICE and its members would suffer immediate, substantial, and irreparable harm. The motion appeared to relate these allegations to the outcome of the presidential contest, stating that "[a]t least three of nine Supreme Court justice positions are at stake, and so too are over 300+ federal judicial appointments over the next eight years." Finally, they argued that application of the four-factor test for issuance of a TRO – likelihood of plaintiff's success on the merits, balance of harms to the parties, potential for irreparable injury to the plaintiff, and public interest[8] – favored granting the TRO.

An affidavit by Mr. Giordano submitted in support of the motion reiterated many of the allegations of the complaint and estimated that there were currently 1,100 registered voters in detention and approximately another 700 individuals in detention who were eligible to register to vote. He did not indicate how he calculated those figures. In the affidavit, Mr. Giordano stated his belief that the Governor had partisan motivations for

---

have with respect to "inmate voting," those obligations cannot be traced to the 2016 legislation.

[8] *See Fritszche v. State Board of Elections*, 397 Md. 331, 339-40 (2007).

vetoing the 2016 legislation and for not implementing a "plan for 'inmate voting.'" A draft order submitted with the motion recited verbatim the same relief sought in the complaint's prayer for relief.

In response, the two election boards questioned the standing of VOICE and Mr. Giordano to bring the action. In particular, they noted that Mr. Giordano did not allege that he was a detainee who was unable to vote and that VOICE was not a registered voter. The election boards also argued that the complaint was barred by laches and failed to state a claim under EL §12-202.

In responding to the merits of the complaint's allegations, the election boards argued that VOICE and Mr. Giordano had not made the requisite showing under the four-factor test for a TRO – in particular, that there was little likelihood the plaintiffs would succeed on the merits. The election boards noted that the State Election Law did not treat pretrial detainees and incarcerated misdemeanants differently from other individuals who are eligible to vote and who are unable to physically visit an early voting center during the early voting period or to visit their polling place on election day. Such individuals may request an absentee ballot and may designate an agent, if necessary, to obtain the application and ballot on their behalf. The election boards asserted that VOICE and Mr. Giordano had not identified any act or omission of the election boards inconsistent with the State Election Law, but were in effect protesting the absence of a law requiring special

10

voter outreach services for inmates. The election boards noted that the deadlines for a registered voter to obtain an absentee ballot had not yet expired.[9]

The two election boards argued that the voting rights of inmates who were eligible to vote had not been impeded by the authorities, as volunteers had collected voter registration applications and applications for absentee ballots from detainees and delivered them to the City Board. The election boards submitted affidavits from two employees of the Department of Public Safety and Correctional Services and the Baltimore City Detention Center, one of whom had been assisting detainees with voting for 16 years.

*Circuit Court Denial of TRO*

The Circuit Court held a hearing on November 1, 2016 – the day after the motion for the TRO was filed – and denied the motion. We have not been provided with a transcript of that hearing other than the oral ruling of the Circuit Court. In that ruling, the Circuit Court first noted that VOICE was not a registered voter and therefore did not have standing under EL §12-202, the primary statute under which the complaint was brought. However, the court concluded that Mr. Giordano did have statutory standing as a registered voter.

The Circuit Court held that Mr. Giordano's complaint was barred under the principle of laches. In particular, the court noted that EL §3-102 – the statute concerning

_____

[9] The deadline for applying for an absentee ballot for the 2016 general election depended on whether the applicant asked to receive the ballot by mail or fax (November 1), downloaded it from the election board's website (November 4), or picked it up (or had an agent pick it up) at an election board office (November 8).

11

qualifications for voter registration – was "decades old" and that the 2016 legislation that was cited in the complaint as the basis for the relief sought was a "red herring" as it was irrelevant to the categories of individuals on whose behalf Mr. Giordano sought relief from the court.

Alternatively, the Circuit Court held that the plaintiffs had failed to show, by clear and convincing evidence, that an "act or omission relating to an election" threatened to change the outcome of an election. The court noted that the only evidence submitted by the plaintiffs were "bald unsubstantiated assertions" in the affidavit of Mr. Giordano. The Court entered a written order consistent with its oral ruling denying the motion for a TRO.

VOICE and Mr. Giordano advise that they sought to have a fuller evidentiary hearing before the Circuit Court later that week, but were unsuccessful in doing so and instead pursued the current appeal.

*Appeal of Denial of TRO*

VOICE and Mr. Giordano immediately appealed the denial of the TRO directly to this Court, as permitted by EL §12-203(a)(3),[10] on Wednesday, November 2, 2016. We ordered expedited briefing and heard argument on Monday, November 7, 2016 – the day before the 2016 general election.

---

[10] That provision states that any appeal is to be "taken directly to the Court of Appeals within 5 days of the decision of the circuit court." EL §12-203(a)(3). The Court of Appeals is to give priority to the appeal and decide it "as expeditiously as the circumstances require." EL §12-203(b).

In their appeal, VOICE and Mr. Giordano argued that (1) the Circuit Court should have granted the requested TRO and (2) the Circuit Court should have scheduled an evidentiary hearing on the merits of their request for a preliminary injunction prior to the election.

In the papers filed with us, VOICE and Mr. Giordano submitted, for the first time, an affidavit of Terrance Darnell Fields dated November 4, 2016, in which Mr. Fields stated that he was a registered voter affiliated with the Republican Party, a member of VOICE, and a current pretrial detainee who wished to vote in the 2016 general election. However, Mr. Fields was apparently registered to vote in Baltimore County, not Baltimore City – and therefore not a voter normally served by the City Board. At oral argument, counsel for VOICE and Mr. Giordano conceded that Mr. Fields' affidavit had not been presented to the Circuit Court, but explained that they would have presented testimony like the affidavit if they had been successful in arranging an additional evidentiary hearing in the Circuit Court.

In their brief, VOICE and Mr. Giordano argued that they both have standing, that they were not late in filing their complaint, and that they satisfied the four-factor test for obtaining a TRO. In contesting the Circuit Court's rulings on standing and laches, VOICE and Mr. Giordano modified some of their positions in the Circuit Court. On appeal, they relied on the alleged membership of Mr. Fields in VOICE to support "associational standing" of the organization. Although they continued to refer to the effect of the 2016 legislation in expanding voting rights, they appeared to have dropped any contention that the 2016 legislation affected the voting rights either of pretrial detainees or of incarcerated

13

misdemeanants – or has any bearing on the outcome of this case. With respect to their contention that the alleged unlawful acts or omissions of the election boards would affect the outcome of the 2016 general election, they shifted their focus from the presidential election to the election for the Baltimore City Council, noting that the primary elections for two seats on the Council had been decided by small margins.

In response, the election boards reiterated the arguments made before the Circuit Court. They also provided a detailed summary of the statutes governing voter registration and absentee voting and noted that VOICE and Mr. Giordano had not alleged any violation of any specific provision of those statutes.

**II**

**Discussion**

*A.*    *The Standard for a Temporary Restraining Order*

A TRO may be granted "only if it clearly appears from specific facts shown by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result to the person seeking the order …" Maryland Rule 15-504(a). As noted above, to determine whether that standard is met, a court is to consider four factors: (1) likelihood of plaintiff's success on the merits, (2) balance of the harms to the parties, (3) potential for irreparable harm to the plaintiff, and (4) the public interest. *Fritszche v. State Board of Elections*, 397 Md. 331, 339-40 (2007). An appellate court reviews a circuit court's decision to grant or deny injunctive relief, such as a TRO, under an abuse of discretion standard. *Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 394 (2000). To the

14

extent that the trial court's decision turns on a question of law, however, we review that decision without deference. *Ehrlich v. Perez*, 394 Md. 691, 708 (2006).

At the outset, there are a number of issues that must be considered to determine whether VOICE and Mr. Giordano can demonstrate a likelihood of success on the merits: whether either plaintiff has standing to obtain the relief sought in the complaint, whether the appropriate defendants have been named and served,[11] whether the 2016 legislation on which much of the plaintiffs' argument was based affects the particular potential voters on whose behalf plaintiffs seek relief, whether plaintiffs waited too long to file this action and are barred by laches, whether they have alleged any act or omission by the two elections boards contrary to the State Election Law and, assuming there is an act or omission, whether it would have changed the outcome of the presidential election (or even an election for a Baltimore City Council seat).

But we need not resolve all of those issues. We dismissed this appeal for the simple reason that, even if we were to agree with VOICE and Mr. Giordano and conclude that they were entitled to a TRO with respect to the 2016 general election, there was no way that such an order could have been implemented as a practical matter.

### B.      *Mootness*

An appeal is moot if, as a result of time or circumstances, "any judgment or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical*

---

[11] The relief sought in the complaint would require action to be taken by officials in charge of correctional facilities and detention centers. Only the two election boards are named as defendants in the complaint.

15

*Lutheran Church*, 227 Md. 338, 343 (1962). Although this Court may have the legal authority to express an opinion about the issues in a moot case, the appeal is typically dismissed. *Mercy Hospital, Inc. v. Jackson*, 306 Md. 556, 562 (1986).

An example is *Lloyd v. Board of Supervisors of Elections*, 206 Md. 36 (1954). In that case, an individual sought to be listed as a candidate for an Orphans' Court vacancy on both the Democratic and Republican primary ballots. When the local elections board declined to do so – based on an Attorney General opinion that concluded that a candidate for Orphans' Court could not run in both primaries – he brought a mandamus action in circuit court. The circuit court upheld the election board. The candidate appealed, but did not press for an expedited hearing, and the primary election took place before the appeal was heard. This Court ultimately dismissed the appeal as moot. The Court declined to exercise whatever authority it might have to address the legal issue raised by the candidate, noting that the issue was of statutory rather than of constitutional dimension, that the Legislature had the option of amending the statute before the next election, and that, if the Legislature chose not to do so, a similar action could be prosecuted in a more timely manner before the next election. 206 Md. at 43-44.

In this case, it is evident that, once the complaint was filed, both sides and the Circuit Court cooperated in advancing this litigation expeditiously. The Circuit Court ruled immediately after holding a hearing. The parties then promptly briefed this appeal and oral argument was scheduled the day after the briefs were filed. But, by the time the appeal was argued to us, the early voting period was over and the general election was just hours away. Even if this Court, or the Circuit Court on remand from the appeal, were to order

16

State officials to create a system of "inmate voting" for the 2016 general election, it would have been impossible to effectively accomplish such a task in the few hours remaining before the polls opened on election day.[12] Given that election day is the busiest day of any year for election officials, such an order would not only have been ineffective, but counter-productive in ensuring an orderly election. In our view, the request for a TRO related to the November 8, 2016 general election was moot by the time it reached us on November 7.

VOICE and Mr. Giordano appear to attribute the late filing of their law suit to the deadline for voter registration. They assert that they did not have a cause of action under EL §12-202 until the ordinary statutory deadline for voter registration (October 18, 2016) had passed and an eligible inmate would no longer be able to register to vote.[13] It is difficult

---

[12] At oral argument, VOICE and Mr. Giordano adopted a fallback position that a "package of absentee ballots" could simply be distributed to inmates on election day in lieu of more extensive relief. However, the particular absentee ballot appropriate for a particular voter depends on the voter's residence, which determines the local offices (*e.g.,* City Council member) for which the voter may cast a ballot. We were informed that there were nearly 30 different versions of the ballot – known as "ballot styles" − for the 2016 election in Baltimore City alone, and numerous permutations in each of the other jurisdictions, such as Baltimore County where Mr. Fields was eligible to vote. One who wishes to vote by absentee ballot must submit an application for the ballot, in part so that election authorities can match the voter to the appropriate absentee ballot. Matching a prospective inmate voter to the appropriate absentee ballot inside the detention centers on election day would have required a significant diversion of personnel and resources at the very time that election officials were attempting to timely open and appropriately staff every polling place in the State – a challenging prospect in the best of times.

[13] Effective January 1, 2016, a person could also appear in person at an early voting center in the county of residence to register to vote during the early voting period (October 27- November 3). EL §3-305. This option would not, of course, be available to an inmate.

17

to discern the logic of this argument under which they waited until election officials, following the State Election Law, would no longer register inmates to ask a court to order those officials to register potential voters outside the period specified in the law – under a statute designed to correct actions of officials contrary to the State Election Law. In any event, VOICE and Mr. Giordano do not explain why the deadline for voter registration would affect a cause of action on behalf of inmates who were already registered to vote, such as Mr. Fields.[14] Nor do they explain why, assuming VOICE and Mr. Giordano have standing, they were precluded from seeking a declaratory judgment before that date.

## C. Remand

This is the end of this appeal. It may or may not be the end of this case. At this juncture, all that has been decided is the plaintiffs' request for a TRO with respect to the 2016 general election. Any other relief sought with respect to the 2016 general election is, of course, also moot. As indicated earlier, the complaint appears to request more general declaratory and injunctive relief. But no trial has been held and any declaratory judgment would be premature at this point.

Assuming Mr. Giordano or VOICE can demonstrate the requisite standing for seeking declaratory relief, in theory they might pursue what remains of their complaint on

---

[14] In their appeal brief, they suggested that a cause of action for Mr. Fields did not accrue until October 27, 2016, the first day of the early voting period. The rationale for that assertion – *i.e.,* what act or omission inconsistent with the State Election occurred on that date – is not clear from the brief.

18

remand as it relates to voter registration and voting in a future election. We offer a few thoughts on standing and declaratory relief for guidance of the Circuit Court.

1.    Some Considerations on Standing

To the extent that the complaint is based on EL §12-201 *et seq.,* Mr. Giordano has statutory standing as a registered voter. *See* EL §12-201(b); *Suessmann v. Lamone*, 383 Md. 697, 712-13 (2004). But, as the Circuit Court noted, VOICE is not, and cannot be, a registered voter and therefore has no standing under that statute. A cause of action under that statute rests on an allegation that an act or omission in violation of the State Election Law may affect the outcome of an election – an assertion somewhat more difficult to make at this juncture with the end of the 2016 general election and the next election more than a year in the future.

To the extent that the complaint is based on the declaratory judgment statute, CJ §3-401 *et seq.,* a circuit court may grant such relief "if it will serve to terminate the uncertainty or controversy giving rise to the proceeding," and if:

> (1)    An actual controversy exists between contending parties;
>
> (2)    Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
>
> (3)    A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

CJ §3-409(a). *See also Falls Road Community Ass'n v. Baltimore County*, 437 Md. 115, 145-46 (2014).

19

To have standing to bring a declaratory judgment action, VOICE and Mr. Giordano must have standing under the Maryland common law.[15]  This Court recently summarized that requirement:  Absent special statutory standing,[16] "a person – individual or organization – has no standing to bring an action in court unless the person has suffered some kind of special damage." *Fraternal Order of Police v. Montgomery County*, 446 Md. 490, 506 (2016).  Thus, common law standing "depends on whether one is aggrieved, which means whether a plaintiff has an interest such that [the plaintiff] is personally and specifically affected in a way different from … the public generally." *Kendall v. Howard County*, 431 Md. 590, 603 (2013) (quotation marks and citations omitted).

VOICE has asserted that it has "associational standing" on behalf of its members under federal case law that recognizes such standing if:  (1) an organization's members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit.  *See Taubman Realty Group L.P. v. Mineta*, 320 F.3d 475, 480 (4t^h Cir. 2003).  VOICE did not formally establish the first element of this formula in the Circuit Court – *i.e.*, whether its members would have standing

---

[15] The declaratory judgment statute also explicitly confers standing on certain parties in certain types of cases. *See, e.g.,* CJ §3-408 (specifying who may seek declaration of rights relating to a trust or the estate of a decedent).  No such provision in the declaratory judgment statute, however, applies to this case.

[16] *See Accokeek, Mattawoman, Piscataway Creeks Community Council, Inc. v. Public Service Commission*, ___ Md. ___, 2016 WL 7324009 (December 16, 2016), for a case involving a statute broadly conferring standing on potential plaintiffs.

individually – although it might achieve that end with the affidavit of Mr. Fields or other inmate members. In any event, this Court has not yet recognized such derivative standing. "We have long held the view that, under Maryland common law principles, for an organization to have standing to bring a judicial action, it must ordinarily have a property interest of its own – separate and distinct from that of its individual members – and that … an organization has no standing in court unless [it] has also suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public…. If it were otherwise – if any person or group disenchanted with some public policy but not adversely affected by it in some special way were free to seek a judicial declaration that the policy is invalid – the courts, rather than the legislative branch, would end up setting public policy, and that is *not* the proper role of the Judiciary." *Evans v. State,* 396 Md. 256, 328-29 (2006) (quotation marks and citations omitted; emphasis in original).

Thus, VOICE does not have standing to seek a declaratory judgment concerning its interpretation of the obligations of the election boards under the Election Law Article, simply because its members are interested in that interpretation or even because its members may themselves be specially affected by that interpretation. The organization itself must be specially affected by the interpretation. *See Fraternal Order of Police v. Montgomery County*, 446 Md. at 506-07 (police union had standing to challenge county's use of public funds to defeat referendum concerning statute on collective bargaining because statute affected the scope of bargaining by the union on behalf of its members).

Neither Mr. Giordano nor VOICE alleged any injury to themselves – *i.e.*, nothing in the complaint indicates that Mr. Giordano was a pretrial detainee or incarcerated misdemeanant, much less that he was an inmate who had been denied an opportunity to register to vote or to obtain an absentee ballot. The belated submission of the affidavit of Mr. Fields was apparently an effort to remedy this deficiency. It remains to be seen whether someone with standing can be substituted as a plaintiff.

2.      Some Considerations for Any Declaratory Judgment

If Mr. Giordano or VOICE establishes standing, they may pursue the request for declaratory relief. At the conclusion of that trial, the Circuit Court would be obligated to issue a declaratory judgment. As this Court has noted on several occasions, even if the Circuit Court were to reject the proposition advanced by VOICE and Mr. Giordano, it would still be required to issue a declaratory judgment, assuming at least one plaintiff has standing to maintain the action.[17]  In the event this case proceeds further in the Circuit Court, we offer a few considerations for the Circuit Court for any declaratory judgment that might be issued in the future based on the current law.

---

[17] That obligation has been succinctly stated as follows:

> … when a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment, defining the rights and obligations of the parties or the status of the thing in controversy, and that judgment must be in writing and in a separate document.  That requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.

*Lovell Land, Inc. v. State Highway Admin,* 408 Md. 242, 256 (quotation marks and citations omitted).

22

Should the Circuit Court be called upon to issue a declaratory judgment on remand, current law and the record to date supports the following propositions:

- Pretrial detainees and individuals who are incarcerated as a result only of a misdemeanor conviction and who are otherwise eligible to vote under EL §3-102 remain eligible to vote, even though they are in custody.

- The 2016 legislation did not affect the eligibility to vote of pretrial detainees and of individuals incarcerated as a result only of a misdemeanor conviction.

- Pretrial detainees and individuals incarcerated as a result only of a misdemeanor conviction who are eligible to register to vote may register to vote by mail, online, or with the assistance of a volunteer. EL §3-201(a)(3), (6), (7).

- Pretrial detainees and individuals incarcerated as a result only of a misdemeanor conviction who are registered to vote retain the right to vote by absentee ballot and to have the assistance of an agent pursuant to EL §9-307 in obtaining the appropriate application and absentee ballot for that purpose.

- The 2016 legislation imposes no special mandate on the State or local election boards with respect to individuals who happen to be in custody as compared to other individuals who may be incapacitated or unable to visit an early voting site or their designated polling place on election day – *e.g.*, as a result of health issues, employment, family or school circumstances.

VOICE and Mr. Giordano assert that "[t]he denial of pretrial detainees' and incarcerated misdemeanants' right to register and vote is inconsistent with the Election Law article." Taken in isolation, that statement is undoubtedly true. But it begs the question that their complaint actually raises – whether the general powers and duties conferred on the election boards by the State Election Law require the election boards to create a special system for "inmate voting" beyond what is available for any voter unable

23

to appear at the voter's polling place on election day and whether the failure to do so is equivalent to a denial of the right to register and vote.

## III

## Conclusion

For the reasons explained in this opinion, we dismissed this appeal as moot. We offer the guidance set forth above for the benefit of the Circuit Court should it be called upon to issue a declaratory judgment following remand.

**COSTS TO BE PAID BY APPELLANTS.**

24

Circuit Court for Baltimore City
Case No. 24-C-16-005773

Argued: November 7, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 60

September Term, 2016

_____

VOTERS ORGANIZED FOR THE
INTEGRITY OF CITY ELECTIONS, ET AL.

v.

BALTIMORE CITY ELECTIONS BOARD,
ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Wilner, Alan M. (Senior Judge,
Specially Assigned)

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: January 23, 2017

Respectfully, I concur. I would remand the case to the Circuit Court for Baltimore City because I agree with the Majority that it remains to be seen whether Terrance Darnell Fields can be substituted as a plaintiff with standing, or whether anyone else has standing with respect to the complaint for declaratory judgment. See Maj. Slip Op. at 22. I would, however, have dismissed the appeal of the denial of the temporary restraining order based on the lack of standing of Voters Organized for the Integrity of City Elections ("VOICE"), Appellant, as to the election claims, and because, although Hassan Giordano, Appellant, may have had standing as a registered voter under Md. Code Ann., Election Law § 12-202, the election claims were barred by the doctrine of laches.

As to the election claims, Appellants filed the action on October 28, 2016—eleven days before the 2016 general election—when the claims could have been filed as early as the April 2016 primary election. "The doctrine of laches, which is both an affirmative defense and an equitable defense, applies where there is an unreasonable delay in the assertion of one party's rights and that delay results in prejudice to the opposing party." Jones v. State, 445 Md. 324, 339, 126 A.3d 1162, 1171 (2015) (citation, brackets, and internal quotation marks omitted). Moreover, the doctrine of laches has been invoked to bar election claims "where the delay in seeking judicial relief was measured in days[.]" Baker v. O'Malley, 217 Md. App. 288, 296, 92 A.3d 588, 593, cert. denied, 440 Md. 115, 99 A.3d 779 (2014). I would have found both aspects of the doctrine of laches to be satisfied. I would not have dismissed the appeal on the ground that it was moot, i.e., that there was not enough time to take action, and that no order giving Appellants the relief that they sought could have been implemented.

In other words, the case should be remanded to the circuit court for action consistent with Part II.C of the majority opinion because VOICE's lack of standing and the doctrine of laches barring the election claims precluded this Court from considering the appeal. In my view, the potential timing of an order to be issued by this Court the day before the 2016 general election did not render the appeal moot.

For the above reasons, respectfully, I concur.